935 F.2d 267
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BANK REALTY, INCORPORATED, Plaintiff-Appellant,
and
James Anthony Thomas, t/a Woodshed Lounge, Plaintiff,
v.
PRACTICAL MANAGEMENT TECHNOLOGY, INCORPORATED, John Kemon,
Individually, Plaza Redevelopment Associates,
Limited Partnership, Leon J. Rosenberg,
Individually, Defendants-Appellees.
 No. 90-2128.
 United States Court of Appeals, Fourth Circuit.
 Argued March 7, 1991.
Decided June 11, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CA-88-3681-HAR)
 Herbert Arthur Terrell, Speights & Micheel, Washington, D.C., for appellants.
 Robert J. Harris, Baltimore, Md., for appellees.
 D.Md.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 PER CURIAM:
 
 
 1
 In June of 1988, appellant Bank Realty, Inc. (Bank Realty), entered into a lease with appellee Plaza Redevelopment Associates (Plaza) to run a tavern in the Frankford Plaza Shopping Center in Baltimore. In August of the same year, appellees Practical Management Technology, Inc. (PMT) and John Kemon (Kemon) assumed management of the Shopping Center and allegedly embarked in an effort, motivated by racial animus against African-American tenants, to oust Bank Realty's tavern from the Center or to compel Bank Realty to renegotiate its lease.
 
 
 2
 In September of 1988, after Bank Realty had filed suit in Baltimore County Circuit Court, the parties reached a settlement where, inter alia, Bank Realty entered into a new lease. Shortly thereafter, however, the pattern of abusive conduct allegedly continued through December, when Bank Realty filed suit in the United States District Court for the District of Maryland, alleging violations of 42 U.S.C. Secs. 1981, 1982, 1985, and 1986 as well as state civil claims. The appellees moved for dismissal or for summary judgment under Federal Rules of Civil Procedure 12(b)(6) and 56. After a hearing, the district court entered summary judgment against Bank Realty on its section 1981 claim and dismissed all of the other claims for failure to state legally sufficient discrimination claims. Bank Realty appeals.
 
 
 3
 On June 1, 1988, Bank Realty entered into a written lease with Plaza for commercial real property in the Frankford Plaza Shopping Center in Baltimore, Maryland. In August of 1988, PMT and Kemon assumed management of the shopping center. According to the complaint, PMT and Kemon, at the behest of appellee Leon Rosenberg, then embarked upon a campaign of actions to oust their new tenant, or at the very least, to force renegotiation of its lease terms, as part of a "grand design" to exclude Black persons and their businesses from the shopping center. Such actions allegedly included improper calls to the Baltimore City Police, in which Bank Realty and its assigns were referred to as "squatters," unilaterally cutting off essential services such as water, and improperly and unlawfully giving notice purporting to require that the property be vacated. PMT also allegedly discriminated against Black-owned businesses in the shopping center by seeking additional rent and maintenance expenses from them that were not required of other businesses, discriminately requiring extraordinary security for their leases, unlawfully changing locks on their premises, and burglarizing their inventories.
 
 
 4
 On December 7, 1988, Bank Realty filed suit against appellees PMT, Kemon, Plaza, and Rosenberg. Bank Realty sought relief under 42 U.S.C. Secs. 1981, 1982, 1985 and 1986, and a variety of state law claims. The complaint purported to invoke jurisdiction based on federal questions and diversity of citizenship. The diversity contention was subsequently abandoned when it was established that PMT's principal place of business, and hence its citizenship, was in Maryland, as was Bank Realty's, and that diversity was therefore not complete among the parties.
 
 
 5
 A motion to dismiss was filed by PMT and initially denied, but upon reconsideration was granted. In addition, the district court granted summary judgment for the appellees on the section 1981 claim. The court concluded that because the acts complained of all occurred after the formation of a lease and were allegedly violative of that lease, and because there had been no allegations that access to state courts had been denied for the purpose of enforcing that lease, the holding of Patterson v. McLean Credit Union, 491 U.S. 164 (1989), rendered the pleading of a claim under section 1981 improper. The district court then went on to rule that no racial motivation properly had been alleged for PMT's actions, and that the section 1981 claim as well as the 1982, 1985, and 1986 claims were defective for that reason. As an alternative ground for dismissing the section 1985 and 1986 claims, the court ruled that a conspiracy had not been pled with legal sufficiency. Finally, the district court found that because the federal claims were insubstantial, pendent jurisdiction was defeated.
 
 
 6
 On appeal, Bank Realty has contested the district court's entry of summary judgment in PMT's favor on the section 1981 claim and the court's dismissal of the section 1982, 1985, and 1986 claims for failure to state a claim.[1]
 
 A. The Section 1981 Claim
 
 7
 Bank Realty first asserts that the allegedly discriminatory conduct of PMT was erroneously found by the district court to be post-contract formation conduct, when in fact such conduct, aimed solely at forcing Bank Realty to enter into a new lease, fell squarely within the section 1981 standard set out in Patterson.
 
 
 8
 The Patterson Court ruled that section 1981 "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through the legal process." 491 U.S. at 179-80. We recently held in Williams v. First Union Nat'l Bank, 920 F.2d 232 (4th Cir.1990), that,
 
 
 9
 the plain language of the Supreme Court in Patterson rejects any claim based on actions which occur after the contract has been formed. Patterson clearly held that section 1981's right to make contracts provision governs only conduct prior to the formation of the contract; it "does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation had been established, including breach of the terms of the contract...."
 
 
 10
 Id. at 234 (citation omitted). In its complaint, Bank Realty states that it entered into a lease with appellee Plaza Redevelopment Associates on or about June 1, 1988 to run a bar and restaurant within the Frankford Plaza Shopping Center. No racially discriminatory conduct was alleged to have accompanied the negotiation or the signing of the lease. In fact, it was not until August of 1988, when the management of the Shopping Center was transferred to appellees John Kemon and PMT, that Bank Realty contends that Plaza, Kemon, and PMT, at the behest of appellee Leon Rosenberg, embarked upon a course of conduct to prevent Bank Realty from continuing to lease its space in the shopping center. As alluded to previously, the acts or conduct alleged included frequent calls to the Baltimore City Police reporting Bank Realty as a squatter, termination of utilities, and notice to vacate the premises. After Bank Realty initiated a lawsuit in Baltimore City Circuit Court in September 1988, the parties reached a settlement whereby the lease was amended to reflect Bank Realty's agreement to pay a slightly higher rent and to assume greater responsibility for utility payments. Bank Realty contends that as early as the next day, PMT reinstituted its harassment, and that a pattern of conduct developed including more calls to the police, changing the locks on the doors of the tavern, burglarizing the tavern, and threatening to report the tavern to various licensing and health agencies.
 
 
 11
 Reprehensible though it may be, such conduct, even when viewed in a light favorable to Bank Realty, Scheuer v. Rhodes, 416 U.S. 232, 236 (1973), clearly falls outside of Patterson's ambit. Thus, the district court's entry of summary judgment against Bank Realty on the section 1981 claim was proper.
 
 B. The Section 1982 Claim
 
 12
 The district court dismissed Bank Realty's section 1982 claim for failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), specifically holding that Bank Realty had failed to plead racial animus with sufficient reference to the factual basis for such an allegation. We disagree.
 
 
 13
 Section 1982 provides,
 
 
 14
 All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.
 
 
 15
 Whether the language of the section would appear to embrace a private lessor's racially motivated interference with a Black lessee's leasehold for the alternative purposes of ousting the lessee or forcing renegotiation of a new lease with less favorable terms appears fairly to be well-settled. See City of Memphis v. Greene, 451 U.S. 100, 120, 122 (1981) (property rights protected by section 1982 include right of Black persons not to have their property interests impaired by white private citizens on the basis of race); Southend Neighborhood Improvement Assoc. v. County of St. Clair, 743 F.2d 1207, 1211-12 (7th Cir.1984) (imposition of terms or prices of property ownership on the basis of race would violate section 1982); Woods-Drake v. Lundy, 667 F.2d 1198, 1201 (5th Cir.1982) (landlord's race-based threat of eviction violated section 1982). The only remaining question, then, is whether Bank Realty's complaint sets out, with sufficient specificity and allegations of fact, a claim that the appellees' efforts to compel renegotiation of the Bank Realty lease, or drive the tavern out of the shopping center, were fueled by racial animus.
 
 
 16
 Viewing the complaint in a light favorable to the Rule 12(b)(6) non-movant; Scheuer, 416 U.S. at 236; we find reference to facts sufficient to state a claim. Bank Realty stated therein that the acts alluded to previously were "aimed exclusively at obtaining ownership or equity interest in Black businesses either in accounts receivable, fixtures, etc. so that the effect is to exclude Blacks from business ownership, interference with their business contracts, and dealings and arrangements and gain an advantage," and that it had "been seriously and materially harmed in both the use and possession of the subject commercial leasehold and in their ability to make or earn money due wholly to their status as members of a racial minority." In addition, the complaint contains an allegation that fees were charged to Bank Realty for phoney services while such charges were not assessed against white businessmen in the renting space in the shopping center. We have little difficulty finding that such averments give rise to a reasonable inference of racial animus sufficient to survive Rule 12(b)(6) dismissal.[2]
 
 C. The Section 1985 and 1986 Claims
 
 17
 Turning, lastly, to the district court's dismissal of the section 1985 and 1986 claims, we determine at the outset, in light of our discussion of sufficient allegations of racial animus with regard to the section 1982 claim, that the district court erred in dismissing the section 1985 and 1986 claims on that basis. There remains, however, a consideration of the district court's alternative basis for dismissing those claims: whether Bank Realty failed to state a claim under sections 1985 and 1986 because, in light of the intracorporate conspiracy doctrine, the allegations in the complaint do not make out a conspiracy between two or more persons.[3]
 
 
 18
 The genesis of the intracorporate conspiracy doctrine may be traced to the field of antitrust law and the case of Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911 (5th Cir.1952), cert. denied, 345 U.S. 925 (1953), where it was held that a corporation cannot conspire with its agents because the acts of the agents are acts of the corporation itself. We recognized the doctrine in its antitrust context in Greenville Publishing Co., Inc. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir.1974), noting the generally recognized exception to the doctrine that a conspiracy may be found where the corporate agent "has an independent personal stake in achieving the corporation's illegal objective." Id.
 
 
 19
 Later, in Buschi v. Kirven, 775 F.2d 1240 (4th Cir.1985), we found the doctrine applicable in the section 1985 civil rights context, recognizing a second exception permitting a conspiracy to be found where the agent's acts were not authorized by the corporation. Id. at 1252-53 (citing Hodgin v. Jefferson, 447 F.Supp. 804, 807 (D.Md.1978)).
 
 
 20
 Turning to the instant facts, the complaint itself makes clear that all of the appellees are part and parcel of a single corporation. The complaint avers that appellee Practical Management Technology, Inc. is a Virginia Corporation and that appellee Plaza Redevelopment Associates, a Maryland Limited Partnership, is a limited or general partner and is the principal of Practical Management Technology, Inc. The complaint further avers that appellee Kemon is an officer, director, and employee of Practical Management Technology, Inc. and that appellee Rosenberg is its principal.
 
 
 21
 Nothing in the language of the complaint, particularly Count Two therein, alleges facts sufficient to invoke either of the exceptions to the intracorporate conspiracy doctrine recognized under the law of the Fourth Circuit. Thus, the district court did not err in dismissing the section 1985 and 1986 claims pursuant to Rule 12(b)(6).
 
 
 22
 We therefore affirm the district court's entry of summary judgment in appellee's favor as to the section 1981 claim and the court's dismissal of the section 1985 and 1986 claims for failure to state a claim upon which relief can be granted. We reverse the district court's dismissal of the section 1982 claim, and remand the case for further proceedings as to that part of Bank Realty's action.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Bank Realty has made no assertion on appeal that the district court should retain pendent jurisdiction over the state law claims
 
 
 [2]
 We thus reserve for another day the question of whether an allegation of racially disparate impact, rather than racial animus, is sufficient to state a section 1982 claim. See Phiffer v. Proud Parrot Hotel, Inc., 648 F.2d 548, 551 (9th Cir.1980)
 
 
 [3]
 The district court presumed, as we do here, that although unspecified in the complaint, Bank Realty apparently premised its claim upon section 1985(3) which provides,
 If two or more persons in any State or Territory conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his advocacy or support in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 Section 1986 provides for legal redress against any person who neglects or refuses to aid in the prevention of a deprivation of rights as defined by section 1985. A fortiori, failure to state a claim under section 1985 results in a similar failure as to section 1986.