Jonathan LEWIN, Plaintiff,

v.

William J. COOKE, Clinton H. Toewe, II, James E. Etheridge, Jr., Robert M. McCombs, James F. Lind, Thomas J. Manser, and Medical College of Hampton Roads, a/k/a Eastern Virginia Medical School of the Medical College of Hampton Roads, Defendants.

No. CIV. A. 2:99CV2117.

United States District Court, E.D. Virginia. Norfolk Division.

April 28, 2000.

---

Richard J. Conrod, Sr., Virginia Beach, for Plaintiff.

A. James Johnston, Jonathan B. Sprague, Mark L. Mattioli, Post & Schell, Philadelphia, PA, David K. Sutelan, Mays & Valentine, Norfolk, for Defendant.

## OPINION

REBECCA BEACH SMITH, District Judge.

The present matter comes before the court on plaintiff's motion to remand and defendants' motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, plaintiff's motion is **DENIED** and defendants' motion is **GRANTED**. Moreover, as the court finds that plaintiff's claims are wholly frivolous and part of an ongoing campaign to harass defendants, the court **SANCTIONS** plaintiff, pursuant to Federal Rule of Civil Procedure 11, pending a determination of plaintiff's financial status and the reasonable attorney's fees and costs incurred by defendants in this lawsuit.

### I. Factual and Procedural History

The suit presently before the court represents the sixth lawsuit filed by plaintiff, Jonathan Lewin, against defendants arising out of a 1991 pharmacology examination score that plaintiff contends resulted from substantively defective examination questions. Plaintiff is a former medical student at Eastern Virginia Medical School ("EVMS"). During his second year at EVMS, in April, 1991, plaintiff requested a leave of absence and permission to postpone registration for a required course in pharmacology. EVMS granted the request, contingent upon plaintiff successfully completing a pharmacology course at another school and passing a school administered pharmacology "challenge" examination (the " 'challenge' exam") designed to measure competency in the subject. Although plaintiff successfully completed a pharmacology course at another school, he failed the "challenge" exam by a small margin.

Plaintiff requested an opportunity to inspect and review the examination. Although EVMS initially opposed plaintiff's request to review the exam, he ultimately was permitted an opportunity to do so. Upon review, plaintiff concluded that two of the questions he had missed were defective. EVMS, maintaining that the questions were valid, refused plaintiff's request for reconsideration of his score.

Over the course of the next two years, Lewin had numerous other difficulties as a student at EVMS, and in March, 1993, the Student Progress Committee ("SPC") convened a hearing to evaluate plaintiff's future at EVMS. Plaintiff appeared with his attorney to correct what he perceived as misinformation in his academic record, including the results of the 1991 "challenge" exam, which he believed to be inaccurate due to the allegedly defective questions. Based upon a complete review of plaintiff's academic record, however, the SPC determined that plaintiff had not demonstrated the level of academic achievement or professional judgment necessary to earn a medical degree from EVMS and, therefore, dismissed plaintiff from the medical school.

Plaintiff, believing that the committee had made an improper decision based upon incorrect information, including his failure of the "challenge" exam, requested an unabridged version of a tape recording of the deliberations of the SPC in order to challenge the basis for the committee's decision to expel him. Although he was permitted to listen to an abridged version, his request for the complete deliberations was denied.

Plaintiff subsequently filed six lawsuits against the defendants based upon these events. Plaintiff filed his first suit *("Lewin I")* in the Circuit Court of the City of Norfolk on December 6, 1993, alleging fifteen separate counts, all of which pertained to the initial withholding of plaintiff's "challenge" exam and the denial of access to the documents used to score the examination. *See Lewin v. Cooke,* L93–4524 (Norfolk Cir. Ct. filed December 6, 1993). Plaintiff took a voluntary non-suit in that case on November 29, 1994.

Plaintiff filed a second motion for judgment *("Lewin II")* in the Circuit Court of the City of Norfolk on March 24, 1994. *See Lewin v. Cooke,* L94–1037. (Norfolk Cir. Ct. filed March 24, 1994). In that action, plaintiff alleged that defendants acted improperly in failing to provide access to the complete recording of the SPC deliberations. On March 23, 1995, before service of process, however, the Circuit Court entered a second voluntary non-suit at plaintiff's request.

One day later, plaintiff filed another suit *("Lewin III")* against defendants in federal court, alleging denial of plaintiff's constitutional rights, violation of the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g (West 1990 & Supp. 1994), violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (West Supp.1995), and various state law claims, all based upon the 1991 "challenge" exam score and plaintiff's subsequent dismissal from EVMS. Plaintiff's constitutional claims and Rehabilitation Act claims were dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), on January 12, 1996, *see Lewin v. Medical College of Hampton Roads,* 910 F.Supp. 1161 (E.D.Va.1996); and plaintiff's FERPA claims, raised pursuant to 42 U.S.C. § 1983 (West 1994 & Supp.1999), were dismissed on motion for summary judgment on August 2, 1996, on the basis that FERPA does not create a federal right to challenge the substantive accuracy of an academic evaluation, *see Lewin v. Medical College of Hampton Roads,* 931 F.Supp. 443 (E.D.Va.1996). With the federal claims dismissed, the court declined to exercise supplemental jurisdiction over the remaining state law claims, warning plaintiff that these claims were so frivolous as to warrant sanctions should he choose to pursue them in state court. *See id.* at 447; (Def. Br. Opp. Remand Ex. 1 at 7–8)[hereinafter *Lewin III* Tr. Summ. J. Hr'g]. Plaintiff, nonetheless, filed these claims in state court *("Lewin IV")* immediately following the final dismissal of *Lewin III.* After three years of litigation, *Lewin* IV was also dismissed on motion for summary judgment. *Lewin v. Medical College of Hampton Roads,* L96–2753, slip op. at 2–3 (Norfolk Cir. Ct. Feb. 4, 2000).[1]

While *Lewin* IV was pending, however, plaintiff filed two more suits against defendants arising out of the same events. On April 14, 1998, plaintiff filed, in Norfolk Circuit Court, his fifth suit against defendants. *("Lewin* V"), but again declined to serve process and voluntarily withdrew the case one year later. *See Lewin v. Steinberg,* L98–0926 (Norfolk Cir. Ct. filed April 14, 1998). Then, on October 8, 1999, the day after all parties participated in a conference designed to limit the issues in *Lewin* IV, and after the state court expressed concerns over the validity of plaintiff's claims in *Lewin* IV, plaintiff filed a

---

**1.** The Norfolk Circuit Court retained jurisdiction of the case for the limited purpose of deciding defendants' motion for sanctions.

sixth motion for judgment ("*Lewin* VI"), which was substantively identical to that filed in *Lewin* V. *See Lewin v. Cooke*, L–99–2448 (Norfolk Cir. Ct. filed October 8, 1999). Once again, however, plaintiff did not serve process. In fact, plaintiff apparently made a "strategic decision" to conceal the pendency of this new suit from defendants, allowing defendants to participate in a settlement conference in *Lewin* IV on October 20, 1999. (Pl. Mem. Supp. Remand Ex. 2 at 28)[hereinafter *Lewin* IV Tr. Rule 4:13 Hr'g]. The Clerk of the Norfolk Circuit Court advised counsel, sometime after October 20, 2000, of the filing of *Lewin* VI, and defendants removed the case to this court on December 27, 2000.

Plaintiff, in this most recent lawsuit, alleges three causes of action, all of which, once again, pertain to the 1991 "challenge" exam and plaintiff's demand for an unabridged copy of the SPC deliberations: (1) plaintiff seeks relief, pursuant to 42 U.S.C. § 1983, for defendants' alleged interference with his efforts to obtain discovery of a master copy of the "challenge" exam and the unabridged SPC deliberations in the course of prior litigation, alleging that defendants' actions prevented him from proving through the courts that he should have received a higher score on the exam and should not have been dismissed from EVMS; (2) plaintiff seeks relief, pursuant to 42 U.S.C. § 1985 (West 1994), alleging that defendants conspired to withhold the "challenge" exam and SPC recording in retaliation for plaintiff "belonging to that class of students who challenge academic authority by trying to enforce student rights," (Compl. ¶ 57), and for providing unfavorable deposition testimony; and (3) plaintiff asserts a state law civil conspiracy claim against defendants also on the basis of the alleged conspiracy to "withhold crucial proof," (Compl. ¶ 49), and defeat plaintiff's lawsuits.

Defendants filed a joint motion to dismiss or, in the alternative, for summary judgment on the grounds that plaintiff's claims are barred by the statute of limitations [2] and the doctrine of res judicata and that plaintiff's conspiracy claims fail, on the face of the complaint, to state a claim on which relief can be granted. Plaintiff, requesting an extension of time to respond to defendants' motion,[3] filed a motion to remand all proceedings to the Norfolk Circuit Court. The parties came before the court for a hearing on these motions on March 14, 2000. The court took both motions under advisement, but allowed plaintiff additional time to respond to defendants' motion to dismiss or, in the alternative, for summary judgment. The court also warned plaintiff that sanctions would be considered, setting forth the basis for such sanctions, and ordering both parties to file memoranda of law and necessary supporting documentation on this

---

**2.** Although it appeared, at first blush, that plaintiff's claims would be barred by the statute of limitations, plaintiff informed the court, during the March 14, 2000, hearing on these motions, that he had tolled the statute of limitations by filing the *Lewin V* motion for judgment. Until that date, neither the court nor defendants were aware that *Lewin V* had ever been filed. Now, with the full history of litigation between the parties presumably before the court, it appears that plaintiff is correct that the statute of limitations was technically tolled by the filing of *Lewin V*. In fact, it appears to the court that over the course of the past seven years plaintiff engaged a strategy of filing stealth lawsuits on the eve of the expiration of the statute of limitations, allowing them to lie dormant, and then voluntarily dismissing them pursuant to Va.Code § 8.01–380 (Michie 1992), in order to take advantage of the six month tolling from the time of nonsuit. *See* Va.Code § 8.01–229(E)(3) (Michie 1992). With artful pleading and technical manipulation of the statute of limitations, it was possible for plaintiff to have at least one lawsuit pending at all times in the event another of his suits was dismissed.

**3.** For the reasons stated from the bench during the March 14, 2000, hearing, the court denied plaintiff's request for an indefinite extension of time to respond to the motion to dismiss or, in the alternative, for summary judgment, but allowed plaintiff one week within which to file his response.

issue. Both parties have so filed, and the motions are now ripe for decision.

## II. *Motion to Remand*

Plaintiff states essentially two grounds in support of his motion to remand. First, plaintiff argues that the case should be remanded on the basis that defendants' notice of removal was untimely under 28 U.S.C. § 1446(b) (West 1994). Alternatively, plaintiff argues that, even had the notice been timely filed, various doctrines of abstention warrant remand. Neither argument is availing.

Title 28 U.S.C. § 1446(b) provides, in relevant part, that a notice of removal shall be filed, "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." In response to the confusion generated by the ambiguous language of § 1446(b), the Supreme Court recently articulated a bright-line test as to when the thirty-day time period for filing a notice of removal begins to run:

> First, if the summons and complaint are served together, the 30–day period for removal runs at once. Second, if the defendant is served with the summons but the complaint is furnished to the defendant sometime after, the period for removal runs from the defendant's receipt of the complaint. Third, if the defendant is served with the summons and the complaint is filed in court, but under local rules, service of the complaint is not required, the removal period runs from the date the complaint is made available through filing. Finally, if the complaint is filed in court prior to any service the removal period runs from service of the summons.

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999)(holding that thirty-day removal period began to run, not when defendant received faxed, file-stamped copy of the complaint, but rather when defendant was formally served by certified mail). Although it is clear that plaintiff never served defendants with a summons in this case, the Supreme Court in *Murphy Bros.* also acknowledged that waiver of service may obviate the need for summons in certain circumstances. *See id.* at 351, 119 S.Ct. 1322 (*"Unless a named defendant agrees to waive service,* the summons continues to function as the *sine qua non* directing an individual to participate in a civil action.")(emphasis added).

Relying upon this caveat in the Supreme Court's opinion, plaintiff argues that Virginia state law recognizes that a "general appearance" by a defendant may constitute a waiver of service of process, *see Gilpin v. Joyce,* 257 Va. 579, 581, 515 S.E.2d 124 (1999), and states that defendants, in the case at bar, entered such a general appearance, waiving service, on November 15, 1999. Specifically, plaintiff states that, during a pre-trial hearing convened in *Lewin* IV on November 15, 1999, counsel for defendants, having recently learned of the filing of *Lewin* VI from the Clerk of Court, notified the presiding judge that this most recent case had been filed and was pending in Norfolk Circuit Court on grounds substantially related to the issues pending in *Lewin* IV. According to plaintiff, this statement to the presiding judge in *Lewin* IV constituted a general appearance on the merits of *Lewin* VI, such that defendants should be deemed to have waived service of process, triggering the thirty-day period for removal on November 15, 1999, and rendering the December 27, 1999, petition for removal untimely.

In support of this argument, plaintiff relies on the Virginia Supreme Court's decision in *Lake Bowling Alley v. Richmond,* 116 Va. 429, 82 S.E. 97 (1914), for the proposition that Virginia defines "general appearance" quite liberally, such that minimal activity by a defendant could be deemed an appearance on the merits of a case. A cursory review of the *Lake Bowling Alley* decision, however, reveals that

plaintiff's reliance is misplaced. Indeed, the facts of *Lake Bowling Alley* differ significantly from those in the present case. In that case, a party who had been served with defective process on an order to show cause by the city assessor, sought to contest the sufficiency of process after damages had been conclusively determined and approved by the mayor. *See id.* at 98–99. The court held that any objection to service of process had been waived by the party's appearance on the merits of the case. *See id.* The court found a general appearance in that case based upon a letter of apology received by the city assessor the day after the scheduled show cause hearing, wherein the party ordered to show cause acknowledged receipt of the order, raised no objection to the sufficiency of service, and set forth the objections to the damage assessment rendered by the city assessor that the party had intended to raise at the show cause hearing. *See id.* Notably, the court in that case based its decision on the fact that the defending party had appeared on the merits of the show cause order *as part of the particular proceeding at issue. See id.*

■ This holding, however, hardly supports plaintiff's argument that defendants may, simply by virtue of raising related issues in a *collateral* proceeding, be deemed to have entered a general appearance on the merits of this case. Virginia courts have, in fact, expressly held that a defendant cannot be deemed to have appeared in a particular case, unless the defendant actually appears in the specific proceeding at issue. *See Sever v. Alwardt,* 45 Va.Cir. 10, 11, 1997 WL 1070601 (1997)(holding that where defendant responded to complaint by filing a disciplinary charge against the plaintiff-attorney regarding the complaint, the filing of the charge by the defendant did not constitute

a general appearance in the underlying lawsuit).

Defendants, in the instant case, clearly did not voluntarily appear to litigate the merits of *Lewin VI*. Defendants never filed any responsive pleadings prior to removal, and no activity was ever reflected on the docket of this case while in Norfolk Circuit Court. To the contrary, it is abundantly clear from the transcript of the pre-trial conference that defense counsel raised the matter of the pending motion for judgment in this case, not as an appearance on the merits of *Lewin VI*, but rather in an effort to keep the judge presiding over *Lewin IV* abreast of the status of the ongoing litigation between the parties. (*Lewin IV* Tr. Rule 4:13 Hr'g at 15–25). As such, and in accordance with the Supreme Court's holding in *Murphy Bros.,* this court finds that defendants' petition for removal, filed on December 27, 1999, prior to service of process, was timely in accordance with 28 U.S.C. § 1446(b).

■ Alternatively, plaintiff argues that, even if the petition for removal was timely, four distinct abstention doctrines favor remand of this case. Without addressing the applicability of the various abstention doctrines to the facts of the instant case, however, it is abundantly clear that plaintiff's reliance on the equitable doctrines of abstention is misplaced. The Supreme Court has conclusively held that abstention doctrines are simply not applicable to suits for damages, but apply only to suits in equity. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 707, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)("Federal courts have the power to dismiss or remand cases based on abstention principles *only* where the relief sought is equitable or otherwise discretionary.") (emphasis added).[4] Plaintiff seeks only monetary damages. Accordingly, as defendants' notice of removal was appro-

---

4. While the facts in *Quackenbush* pertained specifically to abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), both the rationale and dicta of the Court would extend its holding to all of the abstention doctrines. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 717, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). In fact, the Court discussed the applicability of its holding to all abstention doctrines generally. *See id.*

priate and timely, plaintiff's motion to remand must be denied.

### III. *Motion to Dismiss or, in the Alternative, for Summary Judgment*

Upon removing this case to federal court, defendants filed a joint motion to dismiss pursuant Rule 12(b)(6) or, in the alternative, for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. When determining a motion to dismiss under Rule 12(b)(6), the court should accept the facts alleged in the complaint as true and construe them in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss should be granted if the plaintiff's complaint has failed "to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). When additional material is considered by the court which is outside the pleadings, the court should treat the motion to dismiss as one for summary judgment. *See* Fed.R.Civ.P. 12(b). Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the plaintiff must establish the existence of a genuine issue of material fact by presenting evidence on which the jury could reasonably find in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After a thorough review of the full record in this case and oral argument by the parties, it is clear that each of plaintiff's claims must be dismissed in accordance with these standards.

### A. *Res Judicata*

First, as defendants correctly argue, plaintiff's most recent complaint is, in effect, an effort to resurrect FERPA based claims that this court has previously dismissed on summary judgment, employing just slight variations in legal theory to mask an otherwise transparent attempt to deny defendants repose from litigation in this matter. As set forth above in Section I, plaintiff's most recent complaint alleges three causes of action, all of which, once again, pertain to the 1991 "challenge" exam and plaintiff's demand for an unabridged copy of the SPC deliberations: (1) plaintiff seeks relief, pursuant to 42 U.S.C. § 1983, for defendants' alleged interference with his efforts to obtain discovery of a master copy of the "challenge" exam and the unabridged SPC deliberations in the course of prior litigation, alleging that defendants' actions prevented him from proving through the courts that he should have received a higher score on the exam and should not have been dismissed from EVMS; (2) plaintiff seeks relief, pursuant to 42 U.S.C. § 1985, alleging that defendants conspired to withhold these materials and interfere with his property interest in his lawsuits, in retaliation for plaintiff "belonging to that class of students who challenge academic authority by trying to enforce student rights," (Compl.¶ 57), and for providing unfavorable deposition testimony; and (3) plaintiff asserts a state law civil conspiracy claim against defendants also based upon the alleged conspiracy to "withhold crucial proof," (Compl.¶ 49), and defeat plaintiff's lawsuits.[5] Despite plaintiff's artful pleading and strategic manipulation of the statute of limitations, it is

---

**5.** It also appears that plaintiff may intend to assert a claim of conspiracy based on defendants' waiver of service of process in *Lewin IV,* on the grounds that such waiver forced plaintiff to proceed with claims that he apparently intended, once again, to keep dormant strictly in an effort to "preserve the statute of limitations." (Compl.¶ 53). To the extent plaintiff so intends, the court merely notes that answering a lawsuit simply cannot constitute a conspiracy to harm the plaintiff.

apparent that plaintiff's claims are barred by the doctrine of res judicata.

Under res judicata principles, a prior judgment between the same parties precludes subsequent litigation of matters resolved in the first adjudication. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Varat Enterprises, Inc. v. Nelson, Mullins, Riley & Scarborough*, 81 F.3d 1310, 1314–15 (4th Cir.1996); Restatement (Second) of Judgments, § 13 et seq. (1982). "The doctrine encompasses two concepts: claim preclusion and issue preclusion." *First Union Commercial Corp.*, 81 F.3d at 1315 (citing *Allen*, 449 U.S. at 94, 101 S.Ct. 411). These related doctrines "seek to relieve parties of the cost of multiple lawsuits, prevent inconsistent verdicts, conserve judicial resources and encourage reliance on adjudications." *Paragon Serv., Inc. v. Hicks*, 843 F.Supp. 1077, 1079 (E.D.Va.1994)(citing *Allen*, 449 U.S. at 94, 101 S.Ct. 411). Rules of claim preclusion provide that, if the later litigation arises from the same cause of action as the first, then the judgment bars litigation of every matter that was or might have been adjudicated in the earlier suit. *See First Union Commercial Corp.*, 81 F.3d at 1315 (citing *e.g., Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983)). Subsequent litigation will be barred by claim preclusion where there is: (1) a final judgment on the merits in an earlier suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of the parties or their privies to the two suits. *See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991).

Issue preclusion forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Virginia Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311 (4th Cir.1987). Issue preclusion

will apply where: (1) the issue sought to be precluded is identical to an issue previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom estoppel is asserted has had a full and fair opportunity to litigate the issue in the previous forum. *See Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir.1994). Each of plaintiff's three claims are barred by these related principles of res judicata.

First, and perhaps most obviously, excepting the date on which the alleged violations occurred, plaintiff's FERPA based § 1983 claims in the present suit are substantively identical to those that this court dismissed on summary judgment in *Lewin III*. In *Lewin III*, plaintiff stated a claim against defendants, pursuant to 42 U.S.C. § 1983, alleging that defendants violated his FERPA rights by delaying his access to the "challenge" exam and refusing to produce an unabridged copy of the SPC deliberations. (Def. Mem. Supp. Mot. Dismiss / Summ. J. Ex. D, ¶¶ 23–32, 62–63)[hereinafter *Lewin III* Am. Compl.]. Plaintiff sought relief on the basis that, but for these alleged FERPA violations, plaintiff could have proven that he should have passed the "challenge" exam and that he should not have been terminated from EVMS. (*Lewin III* Am. Compl. ¶¶ 64, 81). The court dismissed these claims, holding that FERPA does not provide an avenue by which students may legally challenge the substantive accuracy of academic evaluations, and the Fourth Circuit affirmed *per curiam. See Lewin*, 931 F.Supp. at 446–47, *affirmed*, 120 F.3d 261 (4th Cir. 1997). Plaintiff now seeks to relitigate precisely these same issues by essentially arguing that defendants did it again—again, defendants allegedly delayed producing requested "challenge" exam materials; again, they refused to produce unabridged copy of the SPC deliberations; and again, plaintiff was prevented from

proving that his "challenge" exam was graded incorrectly and that EVMS should not have expelled him. However plaintiff attempts to convolute the issues and argue that this suit involves new and separate requests giving rise to new and independent causes of action, it simply does not. This court, in *Lewin III*, considered exactly those allegations currently before the court, relying on exactly the same legal theory, and held that FERPA does not provide an avenue for students to substantively challenge academic evaluations. To hold that plaintiff could state a new cause of action by merely alleging that defendants did the same thing again and again would allow plaintiff to perpetuate these frivolous claims *ad infinitum*. Accordingly, plaintiff's § 1983 claims are clearly barred by the doctrine of claim preclusion.

■ Similarly, although plaintiff's 42 U.S.C. § 1985 and common law civil conspiracy claims rely on different legal authority than plaintiff's FERPA based § 1983 claims, these conspiracy claims are, at their core, the same claims as those decided in *Lewin III*, simply raised under different legal authority. Plaintiff's legal maneuvering does not, however, preclude this court from looking beneath the surface:

> Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the premise or ground is related to the same transaction or series of transactions.

*Paragon Services*, 843 F.Supp. at 1079 (quoting Restatement (Second) of Judgments § 25, comment d (1982)); *see also Winchester Homes, Inc. v. Osmose Wood Preserving, Inc.*, 37 F.3d 1053, 1058 (4th Cir.1994)(" '[C]ause of action' is defined ... as 'a set of operative facts which, under substantive law might give rise to a right of action. ") (citation omitted); *Smith v. Consolidation Coal Co.*, 7 F.Supp.2d 751, 756 (W.D.Va.1998)(" '[C]ause of action' is not defined by the identity of the statute pleaded.").

In support of his § 1985 claims and his state law civil conspiracy claim, plaintiff alleges that defendants conspired to violate his rights under FERPA and to conceal their wrongdoing by defending against plaintiff's litigation and "withholding crucial proof," (Compl.¶ 49), so they could prevail against plaintiff's litigation. The crucial proof that defendants withheld, not surprisingly, is again the 1991 "challenge" exam materials and an unabridged version of the SPC deliberations, and the alleged harm is the inability to prove that he should have passed the "challenge" exam and been permitted to complete matriculation at EVMS. The court in *Lewin III* considered and dismissed precisely these allegations. Plaintiff cannot revive the claims or circumvent the bar posed by the well-established doctrine of claim preclusion by simply pleading different legal authority for identical allegations.

■ Finally, even if plaintiff's attempt to reformulate his FERPA based claims could be said to present new causes of action, they are, at the very least, barred by the related doctrine of issue preclusion. In order to state a claim under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Virginia's common law of civil conspiracy, plaintiff must state a cognizable injury. *See, e.g.,* 42 U.S.C. § 1983 (Persons acting under color of state law violating an individual's rights secured by the Constitution or laws of the United States "shall be liable to the party *injured.*")(emphasis added); *Buschi v. Kirven,* 775 F.2d 1240, 1257 (4th Cir.1985)(To state a cognizable claim under 42 U.S.C. § 1985, a plaintiff must prove an "injury to the plaintiff as a consequence of an overt act committed by the defendants in connection with the conspiracy."); *Gallop v. Sharp,* 179 Va. 335, 338, 19 S.E.2d 84 (1942)("No cause of action [for civil conspiracy] exists without the resulting injury, and the damage pro-

duced must arise as the effective result of the conspiracy."). The injury that plaintiff allegedly sustained as a result of defendants withholding the materials he had requested is "injur[y] to his property interest in his cause of action." (Compl.¶ 51). While in theory, damage to plaintiff's cause of action could state a cognizable injury, *see Malley–Duff & Associates v. Crown Life Ins. Co.*, 792 F.2d 341, 355 (3d Cir.1986), this court conclusively determined that plaintiff did not have a legally protected right to bring a substantive challenge to defendants' evaluation of his academic performance and that his inability to do so was not a legally compensable injury. *See Lewin*, 931 F.Supp. at 446. No amount of evidence that plaintiff might have discovered to discredit defendants' academic evaluation of his performance could have entitled him to relief. As this court has previously held, "such inquiry is [simply] beyond the scope of permissible judicial intervention." *Lewin*, 931 F.Supp. at 446. Accordingly, even if plaintiff's newly configured FERPA based claims could be characterized as new and independent causes of action, the issue of plaintiff's injury has been conclusively resolved in prior litigation between the parties, entitling defendants to judgment as a matter of law.

### B. *Insufficiency of Conspiracy Allegations*

Although all of plaintiff's claims are clearly barred by the doctrine of res judicata, it is not entirely evident from defendants' motion for summary judgment whether defendants actually assert res judicata as a grounds for dismissal of plaintiff's conspiracy claims.[6] Courts have cer-

tainly recognized that a court, on notice that it has previously decided the issue presented, may raise res judicata *sua sponte*.[7] *See, e.g., Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997); *In re Medomak Canning*, 922 F.2d 895, 904 (1st Cir.1990); *Nagle v. Lee*, 807 F.2d 435, 438–39 (5th Cir.1987). However, in the interests of justice, this court hesitates to grant summary judgment strictly on the basis of res judicata without assurance that plaintiff received notice and an opportunity to respond to this specific basis for the dismissal of his conspiracy claims. Accordingly, the court, in an abundance of caution, will proceed to the merits of defendants' alternative, clearly articulated grounds for dismissal of plaintiff's conspiracy claims, each of which presents an independent basis for rejecting these claims. First, defendants argue that both the § 1985 and state law conspiracy claims raised by plaintiff are barred by the doctrine of intracorporate immunity. Moreover, defendants argue that plaintiff's § 1985 claims, even if not otherwise barred, simply fail to allege a viable cause of action under existing precedent.

#### 1. *Intracorporate Immunity*

The doctrine of intracorporate immunity recognizes that a conspiracy, by definition, requires two or more persons and that, because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy. *See, e.g., Bank Realty, Inc. v. Practical Management Tech., Inc.*, 1991 WL 97490, *3 (4th Cir.1991)(unpublished); *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181, 183

---

6. Defendants, in their initial brief, specifically referred to res judicata only in reference to plaintiff's § 1983 claims. However, defendants' reply brief, to which plaintiff has subsequently responded with a rebuttal brief, clearly states that "all of Plaintiff's claims are barred in as much as the instant lawsuit is nothing more than an attempt to revive claims which have been previously decided

against Plaintiff." (Def. Reply Br. Mot. Dismiss / Summ. J. at 6).

7. This result avoids unnecessary judicial waste in furtherance of an essential policy underlying res judicata. *See, e.g., Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

(8th Cir.1974); *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir.1976), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Bowman v. State Bank of Keysville,* 229 Va. 534, 540–41, 331 S.E.2d 797 (1985)(recognizing intracorporate immunity doctrine under state law). That is, an alleged conspiracy between an employer and its employees acting within the scope of their employment, is "a conspiracy of one, a legal impossibility." *Douty v. Irwin Mortg. Corp.,* 70 F.Supp.2d 626, 632 (E.D.Va.1999). Plaintiff, by suing EVMS and its employees for defending litigation premised upon academic decisions rendered by EVMS employees in the course of their employment, has alleged just such a legal impossibility.

Plaintiff attempts to circumvent this rule by arguing that because he has sued the defendants in their individual capacities, these defendants have developed independent personal stakes in defending this lawsuit and should now be excepted from the doctrine of intracorporate immunity. The Fourth Circuit has held to the contrary that "the immunity granted under the doctrine to the agents and the corporation [is not] destroyed because the agents are sued individually. 'Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation.'" *Buschi,* 775 F.2d at 1252. In the case at bar, all defendants are represented by the same counsel, and the objections to discovery that form the basis of this suit were entered by counsel on behalf of all defendants jointly. To adopt plaintiff's reasoning and hold that a joint response to a lawsuit filed against EVMS and its employees for official actions undertaken on behalf of the medical school removes defendants from the umbrella of intracorporate immunity would be to eviscerate the doctrine. Obviously, this court declines to do so.

### 2. *Prima Facie Case Under 42 U.S.C. § 1985*

Finally, it is clear under existing precedent that, even if plaintiff's federal conspiracy claims were not barred by res judicata and the doctrine of intracorporate immunity, plaintiff's allegations of conspiracy simply fail to state a viable claim under 42 U.S.C. § 1985. Pursuant to 42 U.S.C. § 1985, a cause of action exists where two or more persons conspire to interfere with an individual's civil rights. Plaintiff's complaint appears to raise claims under both § 1985(2) for conspiracy to obstruct justice and § 1985(3) for conspiracy to discriminate based upon class based animus. Conspiracy to obstruct justice under § 1985(2) occurs when "[t]wo or more persons conspire to injure [a] party or witness in his person or property" in retaliation for that party or witness testifying in any court of the United States. 42 U.S.C. § 1985(2). Conspiracy to discriminate under § 1985(3) requires proof of:

(1) [a] conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Buschi,* 775 F.2d at 1257. The Fourth Circuit has held that "to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir.1995). "Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal." *Davis v. Hudgins,* 896 F.Supp. 561, 571 (E.D.Va.1995). The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons,* 47 F.3d at 1377.

In support of his § 1985(2) claim, plaintiff has made general conclusory allegations that defendants conspired to retaliate against him for his deposition testimony by delaying response to, or otherwise objecting to, plaintiff's request for production of certain discovery materials, but plaintiff has failed to provide any specific evidence of such a conspiracy. Moreover, it is exceedingly difficult to conceive of defendants' reluctance to divulge documents relevant to the "challenge" exam or refusal to produce the unabridged SPC recording as retaliation for deposition testimony when, in fact, defendants have expressed their unwillingness to produce these materials from the outset. Given that plaintiff's original complaint in *Lewin I* alleged defendants' unwillingness to timely produce precisely these documents, plaintiff's allegation that this unwillingness became retaliation, simply because he has subsequently given deposition testimony, is untenable.

Alternatively, plaintiff alleges that defendants conspired to retaliate against him, in violation of § 1985(3), for belonging to a "class of students who challenge academic authority by trying to enforce student rights." (Compl.¶ 57). It is well established in the Fourth Circuit, however, that "whistleblowers," academic or otherwise, simply do not qualify as a class entitled to § 1985(3) protection. *See Buschi,* 775 F.2d at 1257–58. Accordingly, plaintiff's federal conspiracy claims, even if not barred by res judicata, fail to state a claim on which relief may be granted.

## IV. *Sanctions*

In reviewing the motions presently before the court, the court became increasingly concerned that, in filing this latest lawsuit, plaintiff evinced a deliberate disregard of prior holdings from this court and was filing redundant, vexatious litigation with the sole intent to further harass defendants. Accordingly, the court, from the bench during the March 14, 2000, hearing on these motions, informed plaintiff that sanctions would be considered, setting forth the basis for sanctions, and ordering both parties to file appropriate memoranda and supporting documentation on this issue. Both parties have so filed.[8]

Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, the attorney or unrepresented party is certifying that to the best of that person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,—
>
> (1) [a document presented to the court] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

Rule 11 provides that "[i]f, after notice and a reasonable opportunity to respond" the court determines that a violation has occurred, the court may "impose an appropriate sanction upon the attorneys, law firms, or parties" that have committed the violation or are responsible for the violation. Fed.R.Civ.P. 11(c).

An inquiry into a party's conduct under Rule 11 is guided by an objective standard of reasonableness and an assessment of the party's subjective intent. *See Stevens v. Lawyers Mut. Liab. Ins. Co.,* 789 F.2d 1056, 1060 (4th Cir.1986). "[T]he inquiry focuses on whether a reasonable attorney in like circumstances

---

**8.** Plaintiff, in fact, filed two memoranda of law on this issue—an initial response to the court's order and a rebuttal brief, responding to the allegations set forth in defendants' memorandum of law.

could believe his actions to be factually and legally justified." *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987); *see also Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.,* 898 F.2d 953, 956 (4th Cir.1990). "An improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte,* 141 F.3d 1434, 1448 (11th Cir.1998); *see also St. Amant v. Bernard,* 859 F.2d 379, 384 (5th Cir.1988)("Repeat litigation of identical claims over identical subject matter may support an inference that the litigation was meant to harass opposing parties."). A party violates the requirement that pleadings be well-grounded in law if the complaint "has absolutely no chance of success under the existing precedent." *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991).

■ In the case at bar, it is apparent that plaintiff's claims are wholly frivolous, having no chance of success under clearly stated precedent. All of the claims set forth in this suit are substantively identical to those which have previously been dismissed on the merits by this court, and plaintiff's conspiracy claims fail on their face, under well-established principles of law, to allege a claim on which relief can be granted.

Although, ordinarily, monetary sanctions may not be awarded against a represented party for filing a legally frivolous claim, *see* Fed.R.Civ.P. 11(c), the circumstances of this case are exceptional in that plaintiff is an attorney, having received a Juris Doctor degree from New York University School of Law and been admitted to the New York State Bar. (Lewin Dep. June 6, 1996 at 21). Moreover, plaintiff was not a passive participant in the filing of these legally frivolous claims. To the contrary, plaintiff directly assisted his counsel with legal research, drafting pleadings, and the preparation of other court documents. (Lewin Dep. Sept. 27, 1999, at 123–24).

Furthermore, these claims are not only frivolous, but, when considered in light of the history of litigation between these parties, plaintiff's claims are indicative of an improper purpose to harass defendants and further plaintiff's ongoing quest for revenge. Without sanctions, this court is gravely concerned that plaintiff will continue to clog the dockets of this court and the state court and continue to manipulate the judicial system to execute his own improper purposes. Indeed, plaintiff testified under oath that he is no longer able to engage in fruitful employment, as he considers suing defendants to be a full-time job. (Lewin Dep. Sept. 27, 1999, at 92–94, 119, 120–24, 131–34). Accordingly, the court finds that sanctions must be imposed against Mr. Lewin for advocating this latest frivolous lawsuit in this court.

■ In calculating the amount of sanctions to be imposed, the court must bear in mind the purposes of Rule 11: "compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets, and facilitating court management." *In re Kunstler,* 914 F.2d 505, 522 (4th Cir.1990). The amount of monetary sanction, however, should always reflect the primary purpose of Rule 11—deterrence of future litigation abuse. *See id.* at 522–23. The Fourth Circuit has provided four factors for the district court to consider in determining an appropriate sanction: (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum sanction needed to deter future frivolous filings; (3) the party's ability to pay; and (4) the severity of the party's Rule 11 violation. *See id.*

In order for the court to determine an appropriate sanction for plaintiff's Rule 11 violations, the court **ORDERS** plaintiff to submit a statement of financial condition within thirty (30) days of the date of this Opinion, which statement the Clerk is **DIRECTED** to file under seal. Defendants may respond under seal within fifteen (15) days of service of plaintiff's financial state-

ment upon them. Defendants are **OR-DERED** to submit an itemized statement of their attorney's fees and costs incurred in connection with this lawsuit within thirty (30) days of this Opinion, to which plaintiff may respond within fifteen (15) days of service of this statement upon him. The court further **ORDERS** that plaintiff shall, hereafter, be prohibited from filing any new action in this court without first filing a certification, under penalty of perjury, that the complaint presents a new claim never before adjudicated in any court and that such claim is neither frivolous nor intended to harass. *See, e.g., Brock v. Angelone,* 105 F.3d 952, 954 (4th Cir.1997)(recognizing that a pre-filing injunction may be an appropriate sanction to deter future frivolous litigation).

### V. *Conclusion*

For the reasons set forth above, plaintiff's motion to remand is **DENIED,** and defendants' motion to dismiss or, in the alternative, for summary judgment is **GRANTED.** As the court finds that plaintiff's claims are wholly frivolous and part of an ongoing campaign to harass defendants, the court **SANCTIONS** plaintiff, pursuant to Federal Rule of Civil Procedure 11, pending a determination of plaintiff's financial status and the reasonable attorney's fees and costs incurred by defendants in this lawsuit. Moreover, the court imposes a pre-filing certification on plaintiff for future lawsuits in this court, as set forth above.

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for both parties and the Clerk of the Circuit Court of the City of Norfolk, Virginia.

It is so **ORDERED.**