**Tony LAZZARINO, plaintiff,**

v.

**KENTON ASSOCIATES, LTD., et al., defendants.**

**No. 96 CIV. 7842(RO).**

United States District Court, S.D. New York.

March 26, 1998.

Saul Rudes, Rand Rosenzweig Smith Radley Gordon & Burstein LLP, Geoffrey S. Pope, for Tony Lazzarino.

Jeremiah B. McKenna, pro se.

Belkin Burden Wenig & Goldman, LLP, Howard Wenig, Magda L. Cruz, for Belkin Burden Wenig & Goldman, LLP.

## MEMORANDUM AND ORDER

OWEN, District Judge.

It has always been axiomatic that in the assertion of a claim in a complaint, the pleader should have *some* good faith basis, and it has regrettably become necessary, in recent years, to make that principle explicit in the Federal Rules.[1] The law firm of Belkin Burden Wenig & Goldman, LLP, formerly a defendant herein, has moved under Rule 11 of the Federal Rules of Civil Procedure for sanctions against pro se plaintiff Tony Lazzarino and his prior counsel, Jeremiah B. McKenna.

On October 17, 1996, plaintiff, represented by McKenna, commenced an action under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 et seq., alleging a widespread conspiracy concerning events in the management and operation of the Apthorp apartment building, where plaintiff resides. This was far from the first action involving the plaintiff in this situation. Prior actions, both by him and against him, are all in state court, including one for his failure to pay the Apthorp rent for more than five years. The defendants named here included the owners, managers and agents of the Apthorp building; the estates of two deceased individuals who were connected with the company which manages the Apthorp; several individual tenants of the building, including one who is a psychiatrist with the Criminal Justice Department;[2] two government agencies: the New York City Department of Housing Preservation and the New York State Division of Housing and Community Renewal;[3] and the said Belkin Burden, the law firm which represented the owner of the building in landlord-tenant matters. A first amended complaint came a week after the filing of the original complaint. Belkin Burden thereupon sent a letter to the Court requesting a conference with regard to the said first amended complaint, which it claimed was frivolous and intended to harass.

A conference was held, with a reporter present, on December 20, 1996.[4] At that

1. Whatever a party or his lawyer's subjective feelings may be as to an adverse party, and from arguments before me they give the appearance of running strong, there is no substitute for the good faith basis the law requires, however slight that basis need be in some situations.

2. The complaint alleges that this psychiatrist, Dr. Murray Gordon, (1) was contacted by the Apthorp manager and asked to perform a mental examination on plaintiff after plaintiff was involved in a physical altercation in the Apthorp parking lot and (2) gave confidential information concerning the contents of plaintiff's psychiatric profile, prepared by the New York City Probation Department in connection with plaintiff's conviction for criminal assault, to the owner of the Apthorp.

3. When the complaint was amended for the second time, the commissioners of these agencies were substituted as defendants for the agencies themselves.

4. At this conference, other defendants, including the government agencies, made similar arguments regarding the sufficiency of the complaint.

conference, Belkin Burden argued that the parts of the first amended complaint which alleged that Belkin Burden was a part of the conspiracy failed to allege any conduct which would qualify as predicate acts under the RICO statute. Belkin Burden, along with the other defendants, sought a dismissal of the complaint. I agreed that the first amended complaint's overall thrust lacked the requisite specificity and dismissed from the bench, granting, however, leave to replead, "subject to the sanctions of Rule 11 in terms of alleging sufficient facts for which there is a good faith basis."[5]

On February 3, 1997, plaintiff filed a second amended complaint.[6] With the exception of one paragraph, the allegations with respect to Belkin Burden in the second amended complaint were almost identical to those in the first amended complaint.[7] Belkin Burden again requested a conference with the Court, claiming that the second amended complaint "contains no meaningful substantive change from the prior complaint." In addition, Belkin Burden sent separate letters to both plaintiff and McKenna,[8] warning them that Belkin Burden would ask for Rule 11 sanctions if the second amended complaint were not withdrawn.[9]

I held another conference, again with a reporter, on April 4, 1997. At this conference, plaintiff, now pro se,[10] was asked to provide factual substantiation for his allegation that Belkin Burden advised 390 West the condition she remain silent about all of those illegal tenancies that she created and filed false documents in the Supreme Court of New York County to get out from under rent stabilization."

Like the other allegations against Belkin Burden in the second amended complaint, this one was both wholly conclusory and insufficient to allege anything relevant to a RICO violation. Moreover, as was explained at oral argument on the sanctions motion, there is a perfectly sound and legally above-board reason that the settlement agreement was sealed. As Howard Wenig of Belkin Burden explained,

> The agreement which contained the confidentiality agreement provided that the terms of the settlement by which Ms. Gray was occupying an apartment worth in excess of $10,000 per month and paying nothing, in order to obtain a vacancy instead of litigating over it for several years, a right to occupy, your Honor, the owner agreed to pay her a sum of money. *In hopes that other tenants would not think that they too would acquire a large sum of money for a vacancy*, a term of that agreement was that the terms of the settlement by which we are paying you a sum of money would remain confidential, your Honor.

(Emphasis supplied.)

---

5. This was by no means the only reference I made to sanctions or to good faith in the course of the conference. As I considered Belkin Burden's arguments, I noted that

> The defendants are in the position that if the allegations are utterly unsupported, there has been a Rule 11 violation and there will be substantial sanctions that would flow from something that is as serious as this, and the defendants have got to be aware that charges cannot just be thrown around willy-nilly because they are in a pleading in a court. There has to be a good faith basis for them. If there is no good faith basis for them, consequences follow. [C]onsequences could be very serious in this case.

In discussion with McKenna, I cautioned him that

> from what I am hearing here a lot of things can be very easily said, but I observe to you that if you make claims against people in the federal court and there is no good faith basis for it, sanctioning can be imposed on you, personally, and the client.

6. Lazzarino was apparently still represented by McKenna at the time of the filing of the second amended complaint. That complaint begins with the statement "Plaintiff, by his attorney, JEREMIAH B. McKENNA, for his complaint alleges as follows". However, the second amended complaint was never signed—by anyone—although the signature line bears McKenna's name.

7. The second amended complaint contained a new paragraph concerning a sealed settlement agreement between the Apthorp's owners and an attorney named Billie Gray who both lived and worked in the Apthorp and who at one time represented 390 West End Associates. Gray was later evicted in a proceeding in which 390 West End Associates was represented by Belkin Burden. According to McKenna at oral argument on the instant motion, "[t]hey settled that eviction proceeding and gave Billie Gray $80,000 on

8. Apparently, both plaintiff and McKenna by this point considered plaintiff to be proceeding pro se, although McKenna never formally moved for permission to withdraw.

9. Similar letters were sent by counsel for other defendants.

10. At this conference, while Lazzarino was no longer represented by counsel, McKenna was present, consulted with Lazzarino, and addressed the Court to defend the sufficiency of the second amended complaint.

End Associates to use coercive eviction in order to maximize rents; his response was that Belkin Burden must have done so because the evictions took place after Belkin Burden began to represent 390 West End Associates and because the evicted tenants had been notified by Belkin Burden attorneys. Because the allegations in the second amended complaint still failed to meet the specificity requirements for a RICO action, I again dismissed the complaint as to Belkin Burden, this time with prejudice, stating that "I find nothing there to hold your law firm in this case that's alleged in this complaint ...." The RICO complaint was also dismissed as to certain other defendants, including the city and state agencies and their commissioners, who had been named as RICO defendants for "wilfull (sic) and deliberate refusal to enforce the laws." The complaint was also dismissed as to the estate of one of the deceased defendants and the Criminal Justice Department psychiatrist. The dismissal was memorialized in my Memorandum and Order of April 24, 1997. While the complaint was left standing at that point on the basis of allegations as to the owners and certain others, on May 6, 1997 the plaintiff unexpectedly voluntarily dismissed as to all remaining defendants, thus completely dropping the action.

■ It is apparent to me from plaintiff's inability to substantiate his claims with respect to many of the defendants—the law firm and the governmental agencies in particular—that plaintiff and his counsel chose the objects of this RICO lawsuit with little if any regard for the basis of conclusory allegations or the harm which a wrongfully-named defendant might suffer. Even though Lazzarino and McKenna were advised that an action would not lie—and that there might be sanctions—if they did not plead with greater particularity and base their complaint on necessary allegations for which there was some good faith basis, they filed a second amended complaint which differed from the first in only the slightest respects. Lazzarino and McKenna completely disregarded my instructions and appear not to have considered, or at least not heeded, that the pleading's "allegations and other factual contentions [must] have evidentiary support, or if specifically so identified, [must be] likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3).[11] Lazzarino and McKenna thus caused Belkin Burden (and other defendants) to incur not only the expense of defending against this frivolous complaint but also the reputational damage that can and here did come from being publicly and groundlessly labelled a racketeer. As a Belkin Burden partner stated at oral argument, "I had clients, your Honor, institutional clients, who do not typically engage lawyers who are being accused of racketeering offenses as their lawyers, questioning exactly why it was that I was a racketeering defendant."

■ In the course of this proceeding, Belkin Burden asserted in response to the Court's question that it incurred attorneys' fees of some $5,000. While I decline to proceed under Rule 11, which now has procedural requirements not strictly followed here, the Court's inherent power allows me to impose sanctions where, as here, the law's pro-

---

11. As was phrased in homely but flowing fashion at the oral argument hereof on October 31, 1997:

THE COURT: [addressing Lazzarino's attorney Geoffrey Pope] [M]y conjecture would be that the first time [the] complaint got dismissed, Mr. Lazzarino's, there must have been conversation where he and Mr. McKenna walked out of the courtroom and he said, Jeremiah, what am I going to do here? The Judge just lowered the boom on me. What am I going to do? There had to have been some kind of a conversation like that.

Mr. McKenna seems to me, from my experience, to have been a very sympathetic man. He came a second time to the hearing. [addressing Mr. McKenna in the courtroom] You weren't even engaged by him but you sort of came here to be of any help you could be. So I sensed a certain sympathy on your part for where he was, and it seems to me that somewhere along the line, Lazzarino was saying, Jeremiah, what do I have to put in here, where have I got this, what does he want, what does the Judge want in this thing. [addressing Mr. Pope] And he had to have been told and they had to have gone and looked it up and seen if he had anything for it. And they didn't put anything in. It seems to me if they had some allegations they could have put in, even on information and belief, we would have seen them. We didn't see anything. That's where 90 percent of this trouble comes from.

cedures have continued to be recklessly used, after ample warning and without concern for the truth, and have caused damage. As the Supreme Court said in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) at 50: "if in the informed discretion of the court, neither the [attorneys' fees] statute nor the Rules are up to the task, the court may safely rely on its inherent power." Accordingly, Lazzarino and McKenna are jointly and severally liable to Belkin Burden and are hereby directed to reimburse Belkin Burden for its attorneys' fees incurred here. Belkin Burden is to serve and submit an affidavit to the court detailing said fees. If issue is taken thereto, I shall, on application, hold a hearing to determine the amount.

The bottom line here is that while the Court feels a tugging where plaintiff's apparent sincerity may be fueled by some merit in some direction, this cannot justify the reckless invocation of the doctrine, "If you see a head, hit it."

The foregoing is so ordered.