Shawn COX, Plaintiff,

v.

PREFERRED TECHNICAL GROUP, INC. and Echlin, Inc., Defendants.

No. Civ. 1:98CV21.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 15, 2000.

Thomas R. Lemon, Lemon, Armey, Hearn and Leininger, Warsaw, IN, for Thomas R. Lemon, mediator.

Kenneth E. Lauter, Denise K LaRue, Haskin, Lauter, Cohen & La Rue, Indianapolis, IN, for Plaintiffs.

Alesia Faulkner, Marion, IN, pro se.

Harold Smith, Marion, IN, pro se.

Shawn Cox, Marion, IN, plaintiff pro se.

Kenneth E Lauter, Denise K LaRue, (See above), for Marlen Bobson, plaintiff.

Kathleen M. Anderson, Barnes and Thornburg, Fort Wayne, IN, John R. Maley, Barnes and Thornburg, Indianapolis, IN, for Preferred Technical Group Inc., defendant.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on a "Motion for Sanctions" filed by the defendants Preferred Technical Group, Inc., and Echlin, Inc. ("PTG"), on May 15, 2000, and on an order to show cause issued by this court on March 16, 2000. The plaintiff, Shawn Cox ("Cox"), filed his objections to the order to show cause on April 20, 2000, to which PTG responded on April 21, 2000. Cox filed his reply on May 3, 2000. Cox also filed a response to PTG's motion on June 6, 2000, to which PTG replied on June 27, 2000. This court held a hearing on the motion for sanctions on July 19, 2000.

Also before the court is PTG's Bill of Costs and Supplemental Bill of Costs, both filed March 30, 2000. Cox filed his objections to the Bill of Costs on April 10, 2000, to which PTG replied on April 14, 2000.

## Discussion

This case began on January 16, 1998, when 21 employees of PTG filed suit against PTG alleging racial discrimination. As the case progressed, all of the plaintiffs except Shawn Cox had their claims dismissed either via stipulation or court order. Cox's attorneys, Kenneth Lauter and Denise LaRue withdrew from the case on June 8, 1999. Cox was unable to secure substitute counsel and petitioned this court for appointed counsel. On July 29, 1999, this court appointed Christopher Myers as Cox's counsel. On March 14 and March 15, 2000, a jury trial was held on Cox's claims. On March 15, 2000, after one hour and thirty minutes of deliberation, the jury returned a verdict for the defendants.

After receiving the jury's verdict, and after the jury had been dismissed from the case and was no longer in the courtroom, this court issued to Cox an oral order to show cause why he should not be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure for forcing a totally meritless case to trial. A hearing was set on the order to show cause for May 5, 2000. Cox was unable to attend the May 5, 2000 hearing and the hearing was reset for July 19, 2000. Cox appeared at the July 19 hearing, with Attorney Myers as counsel, and testified on his own behalf.

As the court noted after the trial on March 15, 2000, Cox's case was a complete fabrication, without an iota of evidence to support Cox's position. Nor did Cox present any evidence challenging the credibility of PTG's witnesses. In its motion for Rule 11 sanctions, PTG makes reference to many of the shortcomings in Cox's case:

1. Cox perjured himself while testifying under oath at trial. In his deposition taken in this case in 1998, which was videotaped and shown at trial, Cox testified without equivocation that he had never been called "nigger." Yet, in his trial testimony, Cox testified that he was called "nigger" numerous times, and that he also heard the word used in his presence.

2. Cox presented unbelievable testimony regarding the type and frequency of the alleged harassment that he experienced on the work floor. Moreover, Cox's testimony was completely contradicted by the sworn testimony of PTG's witnesses. These witnesses, who were totally credible at trial, were Cox's co-workers who worked alongside him at the PTG plant. Cox failed to present any evidence to dispute PTG's witnesses' testimony. In fact, on rebuttal, Cox's testimony became even less credible as he frantically added layer upon layer to his story in an attempt to patch up the holes in his case. This last minute maneuvering resulted in Cox contradicting his earlier direct testimony at trial.

3. Cox asserted throughout this case that he would present 120 witnesses at trial to support his claims. However, the only witness Cox produced at trial was his mother who, obviously, could not testify as to the events that occurred at the PTG plant.

4. During the trial, Cox testified that Silas Donald, an African American former co-worker at PTG, had witnessed the alleged racial harassment complained of by Cox. However, Donald's unequivocal testimony at trial was that he did not hear any racial slurs or see any graffiti while working at PTG. Donald worked for PTG for one and a half years, during the same time that Cox was a PTG employee.

5. Cox presented completely unbelievable testimony regarding the number of times he allegedly reported harassment to PTG management. Cox's testimony was not supported by any credible evidence.

6. Cox, who had filed a sworn application with the Social Security Administration for disability benefits in 1995, lied under oath at trial in an attempt to persuade the jury that his disabilities were not pre-existing.

7. Cox testified at trial that, on a scale of 1–10, his work performance at PTG rated a "12". However, the undisputed documentary evidence at trial showed that PTG had repeatedly counseled Cox for performance problems on the job.

8. Cox continued to pursue his claims through trial even though his only support for his claims was his own unbelievable testimony.

In response, Cox first asserts that the court's *sua sponte* order to show cause is insufficient to support the imposition of sanctions because it failed to sufficiently describe the sanctionable conduct. Rule 11(c)(1)(B) states that:

On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

In *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir.1996), the Seventh Circuit Court of Appeals stated:

The amended Rule 11 also requires that any *sua sponte* action by the district court under the rule be initiated by an order describing the conduct that apparently violates subsection (b) and directing the offender to show cause why it is not in violation.

\* \* \* \* \* \*

It is true that Johnson should have been aware that the imposition of sanctions was a possibility based on both the letter from opposing counsel and the reference to sanctions in the papers filed by Waddell & Reed. Nevertheless, Rule 11 was specifically and clearly amended to add formality to the procedure by which a district court could impose sanctions on its own initiative. Thus, a *sua sponte* action by the district court concerning the imposition of sanctions must include notice and an opportunity to respond. An order from the court must describe the specific conduct which appears to violate Rule 11 and direct the party or counsel to show cause why it has not violated the rule.

Cox apparently interprets *Johnson* as meaning that a district court must enter a separate *written* order to show cause describing the objectionable conduct. However, as PTG notes, the law only requires that an order be issued describing the conduct, and that Cox be given an opportunity to be heard on the issue. In this case, the court, at the conclusion of the trial, specifically explained to Cox that he could be subjected to sanctions for presenting a case based on complete fabrications and not supported by any evidence whatsoever. This court also fully insured that Cox would have a full opportunity to respond to the order to show cause by requesting that Attorney Myers continue to represent Cox and prepare a written response as well as attend the sanctions hearing. Additionally, the court invited Cox to prepare his own explanation of why he continued to pursue his case and, when Cox was unable to attend the hearing scheduled for May 5, 2000, the court rescheduled the hearing to a date more convenient for Cox. In light of all the foregoing, this court concludes that the directives of Rule 11 were fully complied with, and Cox was given completely adequate notice and opportunity to respond to the order to show cause.

■ With respect to the substantive issues, Cox argues that he did not engage in any sanctionable conduct. Cox states that just because the jury chose not to believe him does not mean that he did not have a claim. However, Cox does not even attempt to explain why he had absolutely no evidence to support his claims. Cox does assert that he could not afford to subpoena witnesses (and apparently no witnesses agreed to appear voluntarily). However, Cox did not give any explanation as to why he could not have saved enough money to subpoena at least one witness for one day. The fee for one witness would have only be $40.00 (plus mileage, if applicable) and this case had been pending for over two years prior to trial. Cox failed to explain why he could not have saved $40.00 during that two-year period in order to secure one key witness at his trial. Nor does Cox explain why he was unable to rebut even a single PTG witness (other than with his own unbelievable testimony).

Cox claims that he did not commit perjury. He credits the discrepancies between his deposition and trial testimony to nervousness during his deposition and greater recollection during his trial. Cox acknowledges that his assertion that he would have 120 witnesses at trial was false, but argues that it was merely an exaggeration and that what he really meant was that there were 120 people who saw what *really* happened at PTG, and if these people had testified and told the truth then Cox's testimony would have been supported. Cox further argues that Donald did not tell the truth in his video deposition, and that just because the jury believed Donald and not Cox does not establish that Cox perjured himself. According to Cox his preexisting disabilities also have very little to do with the case and he began working at PTG after he filled out his disability application. Cox points out that many persons with disabilities are in the work force. Cox appears to be missing the point here. Cox's obvious motivation in claiming that he did not have pre-existing disabilities was to extort higher damages from PTG. Not only were Cox's damage claims not made in good faith, his claims were outright lies. With respect to his rating himself a "12", Cox claims that he was merely exaggerating to make a point and that the evidence showed that he was a good worker prior to being harassed at work. Notably, Cox does not cite to the record to support his assertion that he was a good worker at any time during his employment with PTG, and the evidence at trial proved otherwise.

In support of his argument that he should not be sanctioned, Cox cites to *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2nd Cir.1993), wherein the Third Circuit stated:

As we have repeatedly held, "Rule 11 'is targeted at situations "where it is pat-

ently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." ' "

\* \* \* \* \* \*

"When divining the point at which an argument turns from merely losing to losing *and* sanctionable, ... we have instructed district courts to resolve all doubts in favor of the signer."

(citing *Associated Indem. Corp. v. Fairchild Indus.*, 961 F.2d 32, 34–35 (2nd Cir. 1992) (quoting *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir.1988)) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985))).

Cox contends that his claims were well grounded in law and fact because there was no motion for summary judgment filed and there was a trial to the jury, who took one and one-half hours to decide the case [1]. Clearly, however, PTG was unable to file a motion for summary judgment because Cox testified in his deposition that he had been harassed, contrary to the deposition testimony of PTG's witnesses. Such a question of fact precludes summary judgment, and PTG would have been wasting time and money to even file such a motion. Cox seems to be of the opinion that just because his case went to trial that he automatically escapes Rule 11 sanctions [2]. The issue here can be summed up in one word: credibility. If Cox had been at least a little bit credible during the trial, he most likely would not now be the subject of an order to show cause. But Cox was not at all credible. Cox's testimony consisted of completely unbelievable alleged events. He portrayed other PTG employees as mean-spirited racists, when in actuality, there could be no doubt that the other employees did not harass Cox. In fact, one of Cox's alleged physical abusers turned out to be a sweet grandmotherly lady, who could not have possibly physically harmed Cox in any way. Moreover, the evidence at trial firmly established that PTG, rather than promoting harassment and racism, had made commendable efforts to diversify its workforce and promote the hiring of minorities. While some incidents of racism did occur at the plant, it is clear that PTG did its utmost to control problems of this nature. For instance, whenever graffiti appeared in the plant, it was immediately removed or painted over. Rather than having its efforts at diversification appreciated, PTG was slapped with a huge, expensive lawsuit. This is precisely this type of case that Rule 11 was designed to provide a remedy.

Having determined that sanctions are appropriate, the court must next determine the type of sanctions that should be imposed. There are two motions before the court, each with its own possible outcome. Under Fed.R.Civ.P. 11(c)(2), a monetary sanction imposed after a court-initiated show cause order is limited to a penalty payable to the court. However, this limit does not limit the court's ability to impose a sanction of reasonable attorneys' fees upon Cox pursuant to its inherent powers. "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. [Rule 11] does not inhibit the court ... in exercising its inherent powers." Fed.

---

1. It is doubtful that the jury spent the entire 90 minutes deliberating because their deliberations spanned the lunch break.

2. Cox cites to *Nat. Ass'n of Gov. Emp. v. Nat. Feder. of Fed. Emp.*, 844 F.2d 216, 223 (5th Cir.1988), wherein Judge Schwarzer was quoted as saying: "One might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to get to trial." While in the best of worlds frivolous cases would never get to trial, the reality is that the existence of a swearing contest between two witnesses will permit a case to go to trial regardless of its actual merit. Additionally, the justice system is dependent upon citizens taking seriously their obligation to tell the truth while under oath to do so. When this obligation is breached, only a trial can expose the true frivolity of cases.

R.Civ.P. 11, Advisory Committee's Note. Clearly, this court has the inherent power to impose attorneys' fees as a sanction. *Chambers v. NASCO,* 501 U.S. 32, 40, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *In re: Dorothy Generes,* 69 F.3d 821, 826 (7th Cir.1995) ("The court may safely rely on its inherent power [to impose attorneys' fees as a sanction] if, in its informed discretion, neither the statutes nor the rules are up to the task"); *Lazzarino v. Kenton Assoc. Ltd.,* 998 F.Supp. 364, 367–68 (S.D.N.Y.1998). In addition to the court's order to show cause, PTG filed its own motion for attorney fees on May 15, 2000. In granting this order, this court may freely impose attorney fees as Rule 11 sanctions.

█ PTG has submitted a calculation of the attorney fees incurred in this case, solely with respect to Cox's claims. This total amounts to $91,560.50. A review of the time sheets submitted by PTG's counsel shows that from June 30, 2000 (the date Cox remained as the sole plaintiff), PTG incurred $80,917.00 in attorney fees. As this court wishes to focus on the additional expense that Cox required PTG to incur by forcing the case to trial, the court finds an attorney fee award in the amount of $80,917.00 to be appropriate. Accordingly, PTG's motion for attorney fees will be granted in the amount of $80,917.00

█ PTG has also submitted its Bill of Costs itemizing the costs incurred in this case with respect to Cox's claims and trial. PTG seeks $3,814.95 in its Bill of Costs, plus $355.00 in its Supplemental Bill of Costs, for a total of $4,169.95. Cox objects to four general categories of PTG's costs. First, Cox objects to the deposition fees of $1,913.77, arguing that it was not necessary to video tape his deposition, nor was his second deposition necessary. In response, PTG points out that it has not sought fees for the videotaping expenses, and that the second deposition was necessary in December 1999, because the first deposition was taken in 1998, and the second deposition was limited to Cox's activi-

ties since his prior deposition. The court finds nothing improper about PTG's costs with respect to depositions.

Cox next objects to the cost of the Trial Exhibit Notebooks ($114.00). Cox states, without elaboration, that the copy charges were unreasonable and unnecessary under the facts of this case. The court notes that the copy charges were only $.15 per copy, and finds that this charge is not unreasonable. Next, Cox objects to PTG's witness fees, which totaled $921.20, claiming that there was an unnecessary duplication of witnesses. As PTG notes, however, it issued subpoenas to 13 witnesses in direct response to Cox's allegations of numerous instances of harassment and other discrimination. This court agrees with PTG that the 13 witnesses were necessary for PTG to defend itself against Cox's allegations.

█ Lastly, Cox objects to various miscellaneous fees such as the cost of the poster board exhibits, and photocopies of exhibits which Cox claims were not necessary. The total cost of these items was $682.83. Cox accuses PTG of putting on a "Hollywood production" and argues that the miscellaneous expenses were not necessary for the presentation of PTG's case, especially since PTG utilized the court's computerized courtroom equipment, known as the Elmo System. In response to Cox's objections, PTG asserts that it was entitled to defend itself by utilizing any reasonable courtroom tactics. Again, this court agrees with PTG. PTG's counsel was obligated to defend PTG to the best of their ability, and could not be expected to put out a half-hearted effort simply because Cox had an obviously weak case. Cox made serious allegations against PTG, and serious allegations merit serious trial presentations.

█ Fed.R.Civ.P. 54(d) states that costs "shall be allowed as of course to the prevailing party, unless the Court otherwise directs. . . ." Rule 54(d) "creates a presumption that the prevailing party will recover these costs." *M.T. Bonk Co. v. Mil-*

*ton Bradley Co.,* 945 F.2d 1404, 1409 (7th Cir.1991); *Hudson v. Nabisco Brands, Inc.,* 758 F.2d 1237, 1247 (7th Cir.1985). Cox argues that he should be excused from paying PTG's costs because he is indigent. However, a plaintiff's indigency does not require the court to automatically waive costs to an unsuccessful litigant. *McGill v. Faulkner,* 18 F.3d 456, 459 (7th Cir. 1994) (noting that a district court may properly assess costs against even an *in forma pauperis* litigant); *Weaver v. Toombs,* 948 F.2d 1004, 1008 (6th Cir.1991) (same). In *McGill,* the Seventh Circuit Court of Appeals stated that:

> McGill should not be shielded from the costs he forced the defendants to incur with his suit even if he was and is presently indigent. Just as non-indigent litigants must consider the relative merits of their lawsuit against the pain an unsuccessful suit might inflict on their pocketbook, so must prisoners like McGill learn to exercise discretion and judgment in their litigious activity and accept the consequences of their costly lawsuits.

18 F.3d at 460. The *McGill* Court also noted that the rule that indigent plaintiffs may be required to reimburse costs others have expended defending plaintiffs' meritless suits "serves the valuable purposes of discouraging unmeritorious claims and treating all unsuccessful litigants alike." *Id.*

This court finds that Cox has not overcome the presumption that PTG is entitled to its costs and, therefore, the court will award PTG its costs in this action.

### Conclusion

For all of the foregoing reasons, PTG's motion for attorney fees is hereby GRANTED in the amount of $80,917.00. Further, PTG's Bill of Costs (and Supplemental Bill of Costs) is hereby GRANTED in the amount of $3,814.95.