Jonathan LEWIN, Plaintiff,

v.

MEDICAL COLLEGE OF HAMPTON ROADS, James E. Etheridge, Jr., William J. Cooke, Clinton H. Toewe, II, Robert W. McCombs, James F. Lind, Thomas J. Manser, Defendants.

Civil Action No. 2:95cv279.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 2, 1996.

Gerald T. Zerkin, Richmond, VA, for Plaintiff.

A. James Johnston, Post & Schell, Philadelphia, PA, David K. Sutelan, Mays & Valentine, Norfolk, VA, for Defendants.

## MEMORANDUM OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court for resolution of defendants' motion for summary judgment. The action, originally in six counts, now in three, asserts one claim under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g(a)(2), and state-law claims of defamation and breach of contract.[1] For the reasons articulated below, the court GRANTS defendants' motion with respect to the federal claim, and declines to exercise supplemental jurisdiction over the remaining state-law claims.

### A. Factual and Procedural History

The relevant facts of the case are undisputed. Plaintiff, Jonathan Lewin, is a former medical student at Eastern Virginia Medical School ("EVMS"). During his second year at EVMS, Lewin requested a one-year leave of absence and to postpone registration for a required course in pharmacology. The school granted Lewin's request, but required him to take a pharmacology course at another school during the summer of 1990, and to pass a school-administered challenge exam to measure his competency in the subject prior to waiving the EVMS course requirement.

1. On January 12, 1996, the court dismissed plaintiff's claims for violations of substantive and procedural due process rights, as well as a claim under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. *Lewin v. Medical College of Hampton Roads,* 910 F.Supp. 1161 (E.D.Va. 1996) (Jackson, J.).

Lewin took and passed the course at another school that summer, and in September, 1990, he asked EVMS to excuse him from taking the previously agreed upon challenge exam.

In January of 1991, EVMS denied Lewin's request and advised him that he would have to take the challenge exam to receive credit for pharmacology. Lewin took the exam on April 15, 1991, in an attempt to "waive out" of taking the pharmacology course at EVMS. He failed the exam by a small margin, and school officials advised him that he would have to retake the pharmacology course at EVMS. Lewin subsequently enrolled in the pharmacology course at EVMS and completed it with a grade of "high pass," which grade is accurately reflected in his permanent record. His permanent academic record contains no reference to his taking or failing the disputed challenge exam.

Prior to enrolling in the EVMS pharmacology course, Lewin protested his failing score and asked to review the challenge exam. Initially, his request was denied. After Lewin contacted officials with the federal department of education, however, the school agreed to let him see the exam. Lewin claims that two questions on the challenge exam were graded incorrectly, in that the answers he gave were correct, but marked incorrect. He further claims that the school and certain individual defendants denied him the right to a formal hearing and the assistance of counsel to challenge the allegedly inaccurate grade. All this, he asserts, violates the rights guaranteed to him by the FERPA statute.

The defendants moved for summary judgment on June 21, 1996. Defendants argue that plaintiff cannot use FERPA to mount a substantive challenge to the correctness of scores on the disputed test. Because plaintiff seeks to present such a challenge, defendants claim they are entitled to summary judgment. Lewin filed a memorandum in response on July 3, 1996. Defendants' filed a reply brief on July 10, 1996, and the matter came before the court for oral argument on July 24, 1996.

*B. Analysis*

Under FERPA, students seeking to correct misleading or inaccurate information in their academic records are entitled to a formal hearing to resolve their concerns. Among other things, FERPA requires institutions receiving federal funds to:

> provide[ ] an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order to ensure that the records are not inaccurate, misleading, or otherwise in violation of the privacy rights of students.

20 U.S.C. § 1232g(a)(2) (1994). The implementing regulation sets forth the minimum requirements for a hearing under the Act, including the student's right to a disinterested decision-maker, the right to assistance of counsel, and the right to a written decision once the dispute is resolved. 34 C.F.R. § 99.22 (1995).

The statute itself creates no private right of action; however, several courts have held that an action under 42 U.S.C. § 1983 may be premised on a violation of rights under FERPA. *Tarka v. Cunningham,* 917 F.2d 890, 891 (5th Cir.1990); *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 33 (2d Cir. 1986). Lewin has properly stated his complaint in these terms.

Although there is no Fourth Circuit authority interpreting the purpose of FERPA, a recent Fifth Circuit opinion held that the statute did not permit a substantive challenge to the accuracy of the material being tested. *Tarka v. Cunningham,* 917 F.2d 890, 891 (1990). The court in *Tarka* concluded that the statute was not intended to create a federal right to challenge "a professor's grading process" but only to determine whether a student's records accurately "reflect what the grader intended." *Id.* According to the court:

> Congress could not have intended, ..., to afford students a federal right, enforced by federal regulations, to challenge their teachers' or educational institutions' grading process. Such an action would effect a dramatic intrusion of federal authority into the setting of academic standards.

*Tarka*, 917 F.2d at 892; *see Adatsi v. Mathur*, No. 90–2002, 1991 WL 105765, at *3 (7th Cir. June 17, 1991) (unpublished) (noting that "FERPA addresses the situation where a student seeks to have misleading or inaccurate information in his records corrected" and concluding that "[t]here is nothing inaccurate about [plaintiff's] grade. He just feels he deserves something else.").

▮ The court in *Tarka* relied, in part, on legislative history accompanying the passage of the law, which stated:

> There has been much concern that the right to a hearing will permit a parent or student to contest the grade given the student's performance in a course. That is not intended. It is intended only that there be procedures to challenge the accuracy of institutional records which record the grade which was actually given. Thus, the parents of student could seek to correct an improperly recorded grade, but could not through the hearing required pursuant to this law contest whether the teacher should have assigned a higher grade because the parents or students believe the student was entitled to a higher grade.

*Id.* (citing 120 Cong.Rec. 39,862 (1974) (Joint Statement in Explanation of Bukley/Pell Amendment)). Given this unambiguous statement of legislative intent, and the plain language of the statute, it is obvious that FERPA is intended to permit a formal challenge to the accuracy of student records but not to the merit of the underlying testing procedures and substantive test answers.

▮ Applying this same authority, Lewin contends that his failure of the challenge exam constitutes an "inaccuracy" in his record, which he was entitled to question under the procedures mandated by FERPA. Lewin claims that he has "objective proof" that his responses to two challenge exam questions which were marked wrong, were actually correct. According to Lewin's theory, the test failure is an "inaccurate" and "misleading" blemish on his record, because he was correct and the professors who graded the exam were incorrect.

Lewin's complaint is fundamentally a challenge to the substance of his professors' evaluation and, therefore, beyond the reach of the statute. Whatever may be the purpose of FERPA, it is not to permit disappointed students to federalize disputes over the academic accuracy of their professors' grading methods and substantive test answers. *See Tarka*, 917 F.2d at 892 ("FERPA does not create a statutory vehicle to bring such disputes into federal court, nor does it of its own force regulate them—apart from inquiries into whether the grades were recorded 'inaccurately' or 'misleadingly'.").

In an attempt to circumvent this line of reasoning, Lewin argues that his objection to the challenge exam has been misconstrued. He maintains that since the exam called for objectively verifiable answers, he should be able to offer proof that his answers were objectively correct, and hence that he should not have failed the challenge exam. This argument requires too broad a reading of the term "inaccurate."

The challenge exam under dispute was a 158–question test designed to measure Lewin's competency in a difficult subject. Lewin's professors graded the exam, and based on their assessment of his performance on all 158 questions, he was not allowed to "waive out" of the EVMS course requirement. Lewin claims this decision is "inaccurate" because 2 of the 158 questions were ambiguous, or may have had more than one correct answer. The disputed questions were number 52 and number 104. Question 52 reads as follows:

52. Which of the following diuretics is most appropriate for treatment of congestive heart failure?

A. Glycerol

B. Amiloride

C. Furosemide

D. Canrenone

E. Chlorothiazide

Def.Mem.Supp.Sum. J., Ex. B. Question 104, which appears under a graphic depiction of nerve cells, asks:

104. Which of the following statements is INCORRECT?

A. The action of benztropine at Site 4 would increase the release of neurotransmitter at Site 5.

B. Haloperidol produces its clinical effects by blocking receptors at Site 2.

C. Neurons labeled as Site 3 are normal in Parkinson's Disease.

D. Amantadine blocks receptors at Site 1.

E. Selegiline blocks receptors at Site 4.

*Id.*

Lewin marked answer E to question 52, but the graders believed the correct answer was C. On question 104, Lewin marked answer C, but the graders gave credit for answer A. Lewin maintains that both questions were graded "inaccurately," and thus he should have been able to present evidence of this inaccuracy through an impartial hearing as required under FERPA. With respect to question 52, he claims this inaccuracy is objectively verifiable through reference to EVMS course materials and a subsequent exam which he was given after completing the EVMS course on the subject the following year.

With regard to question 104, Lewin elicited deposition testimony from defendant Etheridge which indicates that statement C is an incorrect statement, and thus Lewin's answer to question 104 would have raised a question about whether his exam was graded accurately.

These arguments are as irrelevant as they are unpersuasive. First, the complexity of the questions at issue reveals that Lewin's proof of the alleged inaccuracy does not relate to a technical, ministerial or mathematical mistake in the grading of his exam. Lewin seeks to have a federal jury decide whether "Furosemide" or "Chlorothiazide" is the "most appropriate" treatment for congestive heart failure; and whether or not "Neurons labeled at Site 3 are normal in Parkinson's Disease." Such an inquiry is far outside the scope of permissible judicial intervention in education. *Henson v. Honor Comm. of Univ. of Va.,* 719 F.2d 69, 72 (4th Cir.1983) ("The limit of judicial inquiry into academic administration is early reached.").

Secondly, the materials relied upon as "objective proof" that Lewin's answers were correct, do not support such a conclusion. The EVMS course materials and subsequent exam are not plainly inconsistent with Lewin's score on question 52. The allegedly "parallel question" on Lewin's EVMS pharmacology final merely asks whether "thiazides" are especially useful for treating congestive heart failure. Whether they are or not, it still does not follow that "Chlorothiazide" is the "most appropriate" such treatment. Nor does Dr. Etheridge's statement regarding Lewin's answer to question 104 mandate the conclusion that he was correct in his response. In short, there is no direct conflict apparent between Lewin's score on the pharmacology challenge exam and any pharmacology exam or course work subsequently administered by the school. In the absence of such a direct conflict, any finder of fact would necessarily have to determine, based on expert testimony, whose answers were actually correct, Lewin's or his professors'. This is precisely the sort of academic second-guessing anticipated by Congress, and excluded in the FERPA language which was ultimately enacted.

Finally, Lewin's narrow attack on the two disputed questions ignores the basic fact that the entire 158–question test was designed to measure his overall competency in the subject. Lewin failed the test according to his professors' evaluation. He now seeks to attack the accuracy of that evaluation through an isolated, semantic challenge to only two questions. In order to truly measure the accuracy of the test, however, all 158 questions would need to be evaluated against the course materials, other treatises, and scholarly opinion elicited through expert testimony. It is entirely possible that, of the remaining 156 questions, Lewin may have received credit which did not "accurately" reflect his knowledge of the subject. Such an inquiry is both impractical and impermissible under FERPA.

Because Lewin seeks to use FERPA to question the substantive accuracy of his professors' evaluation on the pharmacology challenge exam, his claim under the statute must fail. Moreover, the challenge exam test

score does not even appear in his permanent school record. All that test score did was require Lewin to take the pharmacology course at EVMS, in which he received a grade of "high pass," which final grade is accurately reflected in his permanent record. Accordingly, the court **GRANTS** defendants' motion for summary judgment on Count 4 of the First Amended Complaint and **DISMISSES** the FERPA claims with prejudice as to all defendants.

In addition, because all the federal claims have been dismissed, and because the pending contract count states theories of relief never before recognized under Virginia law, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367. Accordingly, Counts 1 and 6, stating claims for breach of contract and defamation, are **DISMISSED** without prejudice, and the entire case is **DISMISSED** from the court's docket.

It is so **ORDERED.**