Rehearing en banc denied; panel rehearing granted
solely for purpose of amending opinion; motion
for publication denied; motion for sanctions denied
by unpublished order entered 3/8/02.

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Nos. 00-1732(L)
(CA-99-2117-2)

JONATHAN LEWIN,

Plaintiff - Appellant,

versus

WILLIAM J. COOKE, et al.,

Defendants - Appellees.

ORDER

The court amends its opinion filed January 7, 2002, as follows:

On page 5, third full paragraph -- The paragraph, beginning on the bottom of page 5 and continuing onto the top of page 6, is deleted and is replaced with the following:

> Lewin argues that these pre-<u>Lewin I</u> denials of access had not accrued into a full-fledged FERPA § 1232g(a)(1)(A) violation because EVMS had not yet manifested a policy of denying access to records. If these denials had not accrued into a § 1232g(a)(1)(A) claim prior <u>Lewin I</u>, he could not have brought the claim in that suit, and the claim would not be precluded now. FERPA § 1232g(a)(1)(A) applies to an institution "which has a policy of denying, <u>or which effectively prevents</u>, [eligible students] . . . the right to inspect and review [their] education records." 20 U.S.C. § 1232g(a)(1)(A) (emphasis added). Under the statute an institution

"which effectively prevents" a student from access to his education records violates § 1232g(a)(1)(A), regardless of whether it also has a "policy of denying" access to such records. Even if EVMS had not manifested a "policy of denying" access to Lewin's education records prior to his first lawsuit, it had "effectively prevent[ed]" him from inspecting and reviewing those records. Thus, these denials gave rise to claims under § 1232g(a)(1)(A) prior to the first lawsuit. Alternatively, even if EVMS must have manifested a policy of denial in order for a § 1232g(a)(1)(A) claim to accrue, Lewin's allegations in this suit include multiple denials of access prior to the first federal lawsuit. In his October 8, 1999, motion for judgment filed in Norfolk Circuit Court (which was subsequently removed to federal court), Lewin alleges at least five separate instances prior to Lewin I in which EVMS faculty or administration denied or refused to consider his repeated requests for access to his exam. He also alleges at least two concurrent denials prior to Lewin I of his requests for access to the full SPC deliberations tape. Taken together, these alleged denials suffice to establish a policy on the part of EVMS of denying access to Lewin's education records. Accordingly, even if a plaintiff must show a policy of denial of access to state a claim under § 1232g(a)(1)(A), Lewin's § 1232g(a)(1)(A) right of access claim had accrued by the commencement of his first federal suit.

Entered at the direction of the panel.

For the Court

_____<br>Clerk

UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JONATHAN LEWIN,
    *Plaintiff-Appellant,*

v.

WILLIAM J. COOKE; CLINTON H.
TOEWE, II; JAMES E. ETHERIDGE, JR.;
ROBERT M. MCCOMBS; JAMES F.                 No. 00-1732
LIND; THOMAS J. MANSER; MEDICAL
COLLEGE OF HAMPTON ROADS, a/k/a
Eastern Virginia Medical School of
the Medical College of Hampton
Roads,
    *Defendants-Appellees.*


JONATHAN LEWIN,
    *Plaintiff-Appellant,*

v.

WILLIAM J. COOKE; CLINTON H.
TOEWE, II; JAMES E. ETHERIDGE, JR.;
ROBERT M. MCCOMBS; JAMES F.                 No. 00-1943
LIND; THOMAS J. MANSER; MEDICAL
COLLEGE OF HAMPTON ROADS, a/k/a
Eastern Virginia Medical School of
the Medical College of Hampton
Roads,
    *Defendants-Appellees.*

JONATHAN LEWIN,
     *Plaintiff-Appellant,*

          v.

WILLIAM J. COOKE; CLINTON H.
TOEWE, II; JAMES E. ETHERIDGE, JR.;
ROBERT M. MCCOMBS; JAMES F.                    No. 01-1165
LIND; THOMAS J. MANSER; MEDICAL
COLLEGE OF HAMPTON ROADS, a/k/a
Eastern Virginia Medical School of
the Medical College of Hampton
Roads,
     *Defendants-Appellees.*


JONATHAN LEWIN,
     *Plaintiff-Appellant,*

          v.

WILLIAM J. COOKE; CLINTON H.
TOEWE, II; JAMES E. ETHERIDGE, JR.;
ROBERT M. MCCOMBS; JAMES F.                    No. 01-1335
LIND; THOMAS J. MANSER; MEDICAL
COLLEGE OF HAMPTON ROADS, a/k/a
Eastern Virginia Medical School of
the Medical College of Hampton
Roads,
     *Defendants-Appellees.*


Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CA-99-2117-2)

Argued: October 29, 2001

Decided: January 7, 2002

2

Before WILKINS, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Richard Johan Conrod, Sr., RICHARD J. CONROD, SR., P.C., Virginia Beach, Virginia, for Appellant. Jonathan Barkasy Sprague, POST & SCHELL, P.C., Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** A. James Johnston, POST & SCHELL, P.C., Philadelphia, Pennsylvania; David K. Sutelan, MAYS & VALENTINE, Norfolk, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Jonathan Lewin has sued the Eastern Virginia Medical School of the Medical College of Hampton Roads (EVMS) and various of EVMS's employees, alleging that the defendants prevailed in Lewin's previous federal lawsuit by improperly and illegally withholding crucial information. In the prior federal case Lewin invoked the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g(a)(2), in seeking to challenge the score he received on a pharmacology exam at EVMS. Lewin alleged that two of his answers, which were wrong according to the answer key, were in fact correct. Lewin essentially sought to have a federal court determine, for example, whether chlorothiazide or furosemide is the most appropriate treatment for congestive heart failure. Not surprisingly, the district court dismissed his case, holding that FERPA § 1232g(a)(2) only per-

3

mits actions to correct ministerial or technical inaccuracies in educational records, not to challenge the substantive scientific accuracy of a pharmacology examination. *See Lewin v. Medical College of Hampton Roads*, 931 F. Supp. 443 (E.D. Va. 1996) (*Lewin I*).

In this case Lewin alleges that the defendants denied him access to crucial educational records so as to prevent him from prevailing in his previous federal lawsuit, in violation of FERPA § 1232g(a)(1)(A), 42 U.S.C. § 1985, and Virginia civil conspiracy law. He seeks damages for lost profits, tuition, and other injuries allegedly caused by EVMS's refusal to correct the grade on his pharmacology exam and EVMS's subsequent decision to expel him from the school. The current case arises from the sixth complaint filed by Lewin. In addition to three voluntary non-suits in Virginia state court, Lewin has unsuccessfully litigated one federal and one state lawsuit. Suffice it to say that the factual and legal history leading up to this case is long and complicated. Although this history does not merit a full recitation here, it is set forth in the district court opinion. *See Lewin v. Cooke*, 95 F. Supp. 2d 513, 516-19 (E.D. Va. 2000) (*Lewin II*). The district court rejected Lewin's FERPA and state law claims, and we affirm.

I.

The primary thrust of Lewin's current complaint is that the defendants conspired to withhold information from him regarding the pharmacology exam and the circumstances of his dismissal from school, which in turn "caused the dismissal of Mr. Lewin's case [*Lewin I*] from federal court." Lewin seeks to revive his original claim to correct the grade on his pharmacology exam by alleging that he lost his first federal suit only because the defendants illegally withheld information essential to his case. Upon evaluation of Lewin's complaint, we conclude that all but one of his claims are either barred by res judicata or wholly without merit. As for one of his claims for access to educational records under FERPA § 1232g(a)(1)(A), we will assume *arguendo* that it is not precluded. Nevertheless, Lewin has already received the only remedy to which he is entitled on this claim.

Lewin's complaint recites a number of denials of access to information, most occurring prior to *Lewin I* and a few occurring after

4

*Lewin I*. We will consider the pre-*Lewin I* denials and the post-*Lewin I* denials separately.

A.

First, we address those denials of access to information that occurred prior to Lewin's initiation of his first federal suit. Lewin alleges that in 1991 the defendants failed to provide him access to his pharmacology exam within 45 days of his request, as required by § 1232g(a)(1)(A). He also alleges that in 1993 the defendants denied him access to the unabridged tape recording of the hearing and deliberations of the Student Progress Committee (SPC) that voted to expel him, also in violation of § 1232g(a)(1)(A). To the extent that the defendants denied Lewin access to information *prior* to his first federal lawsuit, these claims are barred by the doctrine of claim preclusion because they are "claims that were raised or could have been raised in the prior litigation." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999).

Both the § 1232g(a)(2) claim brought in *Lewin I* and Lewin's current § 1232g(a)(1)(A) claim allege that the defendants denied Lewin access to documents necessary for him to prove the inaccuracy of the exam. Accordingly, as to Lewin's access claims under § 1232g(a)(1)(A) that accrued prior to his first federal suit, these claims involve the very same facts, are closely related in motivation, and "arise[] out of the same transaction or series of transactions" as his § 1232g(a)(2) claim to correct his educational records. *Id.* (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). Thus, as to denials of access that occurred prior to *Lewin I*, Lewin could have brought (and arguably did bring) his § 1232g(a)(1)(A) right of access claims in that suit, so he is barred by claim preclusion from relitigating those claims in this suit.

Lewin argues that these pre-Lewin I denials of access had not accrued into a full-fledged FERPA § 1232g(a)(1)(A) violation because EVMS had not yet manifested a policy of denying access to records. If these denials had not accrued into a § 1232g(a)(1)(A) claim prior Lewin I, he could not have brought the claim in that suit, and the claim would not be precluded now. FERPA § 1232g(a)(1)(A) applies to an institution "which has a policy of denying, or which effectively prevents, [eligible students] . . . the right to inspect and review [their] education records." 20 U.S.C. § 1232g(a)(1)(A) (emphasis added). Under the statute an institution "which effectively prevents" a student from access to his education records violates § 1232g(a)(1)(A), regardless of whether it also has a "policy of denying" access to such records. Even if EVMS had not manifested a "policy of denying" access to Lewin's education records prior to his first lawsuit, it had "effectively prevent[ed]" him from inspecting and reviewing those records. Thus, these denials gave rise to claims under § 1232g(a)(1)(A) prior to the first lawsuit. Alternatively, even if EVMS must have manifested a policy of denial in order for a § 1232g(a)(1)(A) claim to accrue, Lewin's allegations in this suit include multiple denials of access

5

prior to the first federal lawsuit. In his October 8, 1999, motion for judgment filed in Norfolk Circuit Court (which was subsequently removed to federal court), Lewin alleges at least five separate instances prior to Lewin I in which EVMS faculty or administration denied or refused to consider his repeated requests for access to his exam. He also alleges at least two concurrent denials prior to Lewin I of his requests for access to the full SPC deliberations tape. Taken together, these alleged denials suffice to establish a policy on the part of EVMS of denying access to Lewin's education records. Accordingly, even if a plaintiff must show a policy of denial of access to state a claim under § 1232g(a)(1)(A), Lewin's § 1232g(a)(1)(A) right of access claim had accrued by the commencement of his first federal suit.

B.

Lewin identifies three alleged FERPA right of access violations that he asserts are not barred by claim preclusion because they had not occurred prior to his first suit. Lewin argues that EVMS violated § 1232g(a)(1)(A) by failing to turn over the Master Challenge Exam, which is the answer key to the pharmacology exam, within 45 days of his request on March 1, 1996; by allegedly misrepresenting to the United States Department of Education (DOE) the custody status of the SPC deliberations tape; and by again denying him access in January of 1998 to a complete copy of the SPC deliberations.

As to the Master Challenge Exam, FERPA provides a right of access only to a student's "education records." 20 U.S.C. § 1232g(a)(1)(A). That term is defined by FERPA to include records and documents that "contain information directly related to a student." 20 U.S.C. § 1232g(a)(4)(A)(i). The DOE has indicated in a letter to Lewin that the Master Challenge Exam, which is a general answer key, is not directly related to Lewin and does not constitute part of his educational record. The Master Challenge Exam does not contain Lewin's name, nor does it contain any record of his educational performance. While the Master Challenge Exam was certainly relevant to Lewin's § 1232g(a)(2) claim to correct his educational record, and thus discoverable in that action, we agree with the DOE that it is not itself one of Lewin's education records. Accordingly, Lewin has no right of access to the Master Challenge Exam under § 1232g(a)(1)(A).

Moreover, the Master Challenge Exam was turned over prior to the conclusion of the first federal lawsuit. Because Lewin did have access to this document during that suit, the temporary denial of access did not prevent him from using it to support his claim. Lewin points out

6

that the Master Challenge Exam was turned over only one day before the district court granted summary judgment, and he argues that he did not have adequate time to review and understand the importance of the document. Lewin is barred from now litigating the lateness of the discovery response because he had the opportunity to do that in the first lawsuit. He could have requested a continuance at the summary judgment hearing based on the newly-provided information, or he could have moved for reconsideration once he had the opportunity to appreciate the importance of this document.

Lewin also argues that EVMS violated his right of access by intentionally misrepresenting to the DOE the chain of custody of the SPC deliberations tape. It is not at all clear that the statement about custody in EVMS's letter amounted to a misrepresentation. Even if it did, the misrepresentation was made to DOE, not to Lewin, and the DOE nonetheless ordered EVMS to turn over the SPC tape. Thus, the alleged misrepresentation by EVMS does not constitute a denial of access under § 1232g(a)(1)(A).

Finally, Lewin alleges that EVMS's denial of access to the SPC tape in 1998 constitutes a violation of § 1232g(a)(1)(A) that is independent of the claim-barred 1993 denial. It is not clear whether the district court in the first federal suit actually determined the question of Lewin's right of access to the SPC tape. If it did, the issue of Lewin's right to the SPC tape would be barred under the doctrine of issue preclusion. Lewin's complaint in the first case sought broad relief and could plausibly be read to state a claim for access to the tape in addition to his primary claim to correct his educational records. If read that broadly, the district court's dismissal of his compliant would have necessarily determined that he had no right of access to the tape, and the doctrine of issue preclusion would bar Lewin from re-litigating that same issue. On the other hand, Lewin's earlier complaint primarily presented a § 1232g(a)(2) right to correct educational records claim, not a § 1232g(a)(1)(A) right of access claim. The district court opinion granting summary judgment to EVMS did not discuss whether Lewin had a right to the SPC tape under § 1232g(a)(1)(A). *See Lewin I*, 931 F. Supp. 443. It appears that the SPC tape is part of Lewin's education record to which he is entitled access under § 1232g(a)(1)(A), because it is a record maintained by an educational institution that contains information directly related

7

to Lewin. 20 U.S.C. § 1232g(a)(4)(A). The DOE evidently agrees and has instructed EVMS to provide Lewin with a copy of the tape. We are hesitant to read an implied holding into the district court's previous opinion when that holding appears incorrect. When the issue of whether a prior court actually decided an issue is opaque, we should hesitate to preclude that issue in a subsequent case. 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4420, at 184 (1981).

Assuming *arguendo* that Lewin's § 1232g(a)(1)(A) claim for access to the SPC tape is not barred by issue preclusion, that claim is nonetheless moot. Lewin argues that the denial of access to the SPC tape prejudiced his first federal lawsuit. However, the denial of access to the tape in 1998, *after* the resolution of the first case in 1996, clearly could not have prejudiced his lawsuit. His suit could only have been prejudiced by a denial of access *prior* to the resolution of the case, but any such denial is barred by claim preclusion, as discussed above. The only injury Lewin suffered as a result of the 1998 denial was his inability to review the tape. Accordingly, the proper remedy for Lewin's § 1232g(a)(1)(A) claim is to order EVMS to provide him access to the tape. Lewin did not even request this remedy in his complaint. Moreover, Lewin's counsel stated in oral argument that Lewin has received a complete copy of the transcript of the SPC tape, including the deliberations section, through the course of discovery in his now-completed state lawsuit. Therefore, Lewin has already received the only form of relief to which he is even arguably entitled, and this claim is moot.

Lewin attempts to rescue this claim from mootness by asserting a right to nominal damages. Nominal damages are typically available in § 1983 actions to vindicate constitutional rights. *See Carey v. Piphus*, 435 U.S. 247 (1978). It is less clear whether nominal damages are also available in § 1983 actions asserting statutory rights. *Compare Walker v. Anderson Electrical Connectors*, 944 F.2d 841, 845 (11th Cir. 1991) (holding that nominal damages are not available under Title VII and limiting *Carey*'s holding to constitutional violations), *with Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 841 (1st Cir. 1990) (analogizing *Carey* and affirming an award of nominal damages for a violation of a Massachusetts statute). Even assuming that nominal damages may be available in statutory § 1983 actions,

8

the defendants would enjoy qualified immunity from damages with respect to Lewin's § 1232g(a)(1)(A) claim for access to the SPC tape. Under the doctrine of qualified immunity, governmental officials sued under § 1983 "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory . . . rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The exchange of letters between EVMS and the DOE illustrates that EVMS reasonably believed that the SPC tape was excluded from the definition of education records. The DOE explained that according to its interpretation of FERPA, the SPC tapes did not meet the terms of the exclusion asserted by EVMS. Upon review, we conclude that EVMS's position was a reasonable, if ultimately incorrect, reading of a statutory exclusion that has not been clearly interpreted by the courts. Accordingly, it was not clear at the time of the 1998 denial that the deliberations section of the SPC tape constituted an "education record" under FERPA, so the defendants would be entitled to qualified immunity on that claim. *Cf. Fox v. Bd. of Trustees of the State Univ. of New York*, 42 F.3d 135, 141 (2nd Cir. 1994) (noting that even if the possibility of nominal damages might save an otherwise moot § 1983 claim, the government defendants would be immune from damages claims because the rights at issue were not clearly defined).

In sum, claims alleging denial of access to information that accrued prior to Lewin's first federal suit could have been brought in that suit, so Lewin is precluded from litigating these claims in this suit. As to the three incidents that occurred after the initiation of the first federal suit, two of these incidents do not constitute § 1232g(a)(1)(A) violations, and the third is barred by qualified immunity to the extent it is not moot.

Lewin also sued under 42 U.S.C. § 1985(2), arguing that the defendants conspired to injure his § 1232g(a)(2) cause of action in his first federal suit in retaliation for Lewin's testimony, deposition, and oral arguments in that case. The alleged retaliatory acts are, again, the defendants' withholding of information from Lewin. As stated above, the acts of denial of access to information are either barred by claim preclusion or did not cause injury to Lewin's first federal suit. Accordingly, Lewin's claim under § 1985(2) also fails.

9

## II.

Lewin also asserts a Virginia state law claim for the defendants' alleged conspiracy to withhold information, and he appeals the district court's dismissal of that claim with prejudice. He argues that the district court should not have exercised supplemental jurisdiction over this state claim after it dismissed his federal claims. Given the related nature of the state and federal claims and the repetitive nature of Lewin's litigation, the district court did not abuse its discretion in retaining supplemental jurisdiction over his state law claim.

As to the merits of Lewin's state conspiracy claim, the district court correctly ruled that this claim is both barred by the doctrine of intracorporate immunity and fails to state a viable cause of action. Because the defendants are all agents of EVMS, they constitute a single legal entity. They are thus legally incapable of conspiracy, which requires multiple parties acting together. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985). Lewin argues that the doctrine of intracorporate immunity does not apply here because the individual defendants had an independent personal stake in conspiring to defeat Lewin's lawsuit, *see Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974), and the defendants' acts were unauthorized by EVMS, *see Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985). We conclude that neither of these exceptions apply on the facts of this case and that Lewin's conspiracy claim is barred by intracorporate immunity. In addition, Lewin's conspiracy claim relies on the same withholding of information relied on for his § 1985(2) claim, and it fails to state a claim for the same reasons: the alleged claims are either barred by or causally unrelated to his first suit.

## III.

Lewin appeals the district court's *sua sponte* imposition of Rule 11 sanctions against him in the amount of $5000. Lewin argues that the district court failed to enter an order to show cause describing the allegedly sanctionable conduct, as required by Fed. R. Civ. P. 11(c)(1)(B). In a hearing on March 14, 1996, the district court clearly put Lewin on notice that the court was considering sanctions, described in detail the specific conduct that might be sanctionable,

10

and requested briefs on the issue from both parties. Both parties briefed the issue, with Lewin filing both an initial and a reply brief. The district court's clear instructions during the March 14, 1996, hearing satisfied the aims of Rule 11(c)(1)(B) and thus in effect constituted an oral order to show cause. *See Cox v. Preferred Tech. Group, Inc.*, 110 F. Supp. 2d 786, 788-89 (N.D. Ind. 2000).

Having determined that the court did not violate the procedural requirements of Rule 11, we review the imposition of sanctions for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). The district court determined that Lewin's latest lawsuit had no chance of success under clearly stated precedent, showed a clear intent by Lewin to harass the defendants, and was a blatant attempt to re-litigate previously decided claims. These conclusions are amply supported by the record, and the district court acted well within its discretion in imposing sanctions on Lewin.

## IV.

Lewin challenges the district court's award of attorneys' fees to the defendants, arguing that the defendants' motion for attorneys' fees was not filed within 14 days of the final judgment and thus was untimely under Fed. R. Civ. P. 54(d)(2)(B). The district court's final judgment dismissing Lewin's suit was entered on May 1, 2000. In this judgment order the court imposed Rule 11 sanctions but withheld quantification of the sanctions pending a determination of Lewin's financial status and the amount of attorneys' fees and costs incurred by the defendants. On June 27, 2000, the district court entered judgment quantifying sanctions in the amount of $5000. In the opinion accompanying this order, the court explained its reasons for imposing sanctions and noted that it declined to impose sanctions in the form of attorneys' fees. The defendants then moved for attorneys' fees pursuant to 42 U.S.C. § 1988 on July 11, 2000, within 14 days of the June 27, 2000, order but more than 14 days after the May 1, 2000, order.

Rule 54(d)(2)(B) requires that a motion for attorneys' fees be filed "no later than 14 days after entry of judgment." The rule defines "judgment" to include "any order from which an appeal lies." Fed. R. Civ. P. 54(a). Lewin argues that the motion for attorneys' fees had to

11

be filed within 14 days of the May 1, 2000, order dismissing the complaint, because the motion sought fees associated with defending against the complaint. The defendants argue that Rule 54(d)(2)(B) only requires that the motion be filed within 14 days of any final, appealable judgment, not within 14 days of one specific judgment, and that the June 27, 2000, judgment constitutes a final, appealable judgment.

There is some support for the defendants' argument that any final, appealable judgment suffices to restart the 14-day period for a motion for attorneys' fees. In *Weyant v. Okst*, 198 F.3d 311 (2nd Cir. 1999), the court held that timely postjudgment motions which seek to alter or reverse the judgment, such as Lewin's 60(b) motion for relief from judgment, automatically suspend the finality of the judgment. *Id.* at 314. Accordingly, the court held that a motion for attorneys' fees is timely if filed within 14 days of the resolution of such postjudgment motions. *Id.* at 315.

We need not decide in this case whether Lewin's Rule 60 motion to reconsider tolled the finality of the May 1, 2000, judgment. Given the unique nature of the district court's orders on May 1, 2000, and June 27, 2000, the later order sufficed as a final judgment from which the defendants had 14 days to move for attorneys' fees. In the district court's May 1, 2000, order and accompanying opinion, the court requested an estimation of the defendants' attorneys' fees and clearly indicated that it was considering awarding fees as part of its sanctions order. The May 1, 2000, order therefore preserved the issue of the defendants' attorneys' fees until the final order of June 27, 2000, which quantified sanctions, and the defendants had good reason to believe that the district court would treat attorneys' fees as part of Rule 11 sanctions. The June 27, 2000, order resolved for the first time whether the district court would award the defendants their attorneys' fees. Under these circumstances, it was reasonable for the defendants to wait until the district court had ruled on whether sanctions would include attorneys' fees before making their own motion for fees. Because the question of attorneys' fees was essentially held in abeyance by the May 1, 2000, order until the June 27, 2000, order, that later order constitutes a final judgment for the purposes of Rule 54(d)(2)(B)'s 14-day filing requirement.

12

On the merits, the decision to award attorneys' fees is within the discretion of the district court. *See DeBauche v. Trani*, 191 F.3d 499, 512 (4th Cir. 1999); *Cooke v. Cooke*, 474 S.E.2d 159, 162 (Va. Ct. App. 1995). A prevailing defendant may recover attorneys' fees in § 1983 and § 1985 actions only when the plaintiff's claims were "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). The standard for recovering attorneys' fees under Virginia state law is analogous. *See* Va. Code Ann. § 8.01-271.1 (West 2001). The district court found that Lewin's lawsuit was brought solely for the purpose of harassment, was asserted in bad faith, and constituted an attempt to relitigate matters already adjudicated. These findings are clearly supported by the record, and the district court did not abuse its discretion in awarding attorneys' fees for both Lewin's federal and state claims.

## V.

Lewin also appeals the district court's denial of his motion to recuse, and we review this denial for abuse of discretion. *United States v. Gordon*, 61 F.3d 263, 267 (4th Cir. 1995). After a thorough review of the record, we conclude that the judge acted in an impartial and even-handed manner. Despite her early concerns, which proved justified, that Lewin's suit was frivolous, the judge provided Lewin ample opportunities to argue and brief his positions, fully considered Lewin's numerous motions, and wrote thorough and careful opinions analyzing Lewin's arguments and justifying her decisions. We find Lewin's motion for recusal wholly without merit, and we affirm the district court's denial of that motion.

## VI.

Finally, Lewin appeals the district court's denial of his motion for Rule 11 sanctions. We also review this denial for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Lewin moved for sanctions based on the defendants' allegedly frivolous argument to the district court that Lewin's notice of appeal was premature. The defendants promptly acknowledged their unintentional misstatement of law, which the district court found was both reasonable and non-material. Under these circumstances, Rule 11 sanctions against the defendants are clearly inappropriate. We affirm the district court's denial of Lewin's motion for Rule 11 sanctions.

13

## VII.

For the foregoing reasons, the orders and judgment of the district court are

*AFFIRMED.*

14